Robert Montes, Jr., CA Bar No. 159137
**RAFII & ASSOCIATES, P.C.**
9100 Wilshire Blvd., Suite 465E
Beverly Hills, California 90212
Telephone: 310.777.7877
Facsimile: 310.777.7855
robert@rafiilaw.com

Rachel Mariner (*Admitted Pro Hac Vice)*
**RAFII & ASSOCIATES, P.C.**
1120 N. Town Center Dr., Suite 130
Las Vegas, Nevada 89144
Telephone: 725.245.6056
Facsimile: 725.220.1802
rachel@rafiilaw.com

*Attorneys for Plaintiff Jermaine Whitfield,*
*on behalf of himself and others similarly situated,*

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| JERMAINE WHITFIELD, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>LEVI STRAUSS & CO.; and DOES 1 through 50, inclusive,<br><br>Defendant. | Case No.: 3:26-cv-01300-RFL<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT LEVI STRAUSS & CO.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Judge: Hon. Rita F. Lin<br>Date: March 20, 2026<br>Time: 10:00 AM |

Defendant Levi Strauss & Co ("Defendant" or "Levi Strauss") has moved to dismiss the First Amended Complaint ("FAC"), but provides no viable reason to dismiss any cause of action. For the reasons set forth herein, Plaintiff Jermaine Whitfield ("Mr. Whitfield" or "Plaintiff") respectfully requests that Levi's Motion to Dismiss the First Amended Complaint ("FAC") be denied.

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

DATED: March 9, 2026

Respectfully Submitted,

**RAFII & ASSOCIATES, P.C.**

/s/ Rachel Mariner

Rachel Mariner (*Admitted Pro Hac Vice)*
RAFII & ASSOCIATES, P.C.
1120 N. Town Center Dr., Suite 130
Las Vegas, Nevada 89144
Telephone: 725.245.6056

Robert Montes, Esq. (Bar No. 159137)
9100 Wilshire Blvd., Suite 465E
Beverly Hills, California 90212
Telephone: 310.777.7877

*Attorneys for Jermaine Whitfield, on behalf of himself and all others similarly situated*

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

## TABLE OF CONTENTS

I. FACTUAL BACKGROUND AND SUMMARY OF ARGUMENT ........ 5
II. STANDARD OF REVIEW ........ 6
III. ARGUMENT ........ 8
A. Defendants Fail To Prove Mr. Whitfield's Claims Are Pre-empted ........ 8
1. The Asserted CBAs Do Not "Provide Otherwise For Overtime" In Any Way Applicable To Plaintiff's Overtime Claims ........ 8
2. Even if Plaintiff's State Law Claims were "Directly Based" Or "Substantially Dependent" On Defendant's CBAs With The Union, Supreme Court Precedent Requires They Not Be Dismissed. ........ 11
3. Preemption Would "Disadvantage Unionized Employees Simply For Being Covered by A CBA ........ 12
4. Firestone Does Not Permit Section 301 Preemption ........ 12
B. Mr. Whitfield Has Plausibly Alleged Similar Practices Across The Distribution Center Workforce ........ 13
IV. CONCLUSION ........ 16

# TABLE OF AUTHORITIES

## CASES


*Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) ............ 7

*Austin v. Ken's Food, Inc.,* 771 F.Supp.3d 1 (D. Mass. 2025)........................................................ 15

*Burnside v. Kiewett,* 491 F.3d 1053, 1059 (9th Cir. 2007) ................................................................ 7

*Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053 (9th Cir. 2007).......................................... 8, 10, 12

Chodos v. W. Publ. Co., 292 F.3d 992, 1003 (9th Cir. 2002)............................................................ 8

*Colson v Avnet,* 687 F.Supp.2d 914 (D. Ariz. 2014)........................................................................ 14

*Fernandez v. Tox Corporation,* 677 F. Supp. 3d 1089, 1098........................................................... 15

*Firestone v. Southern California Gas Co.*, 219 F.3d 1063 (9th Cir. 2000)....................................... 12

*Harrington v. Cracker Barrel Old Country Store*, 142 F.4th 678 (9th Cir. 2025)................................ 8

*Hernandez v. Pacific Underground Construction,* 794 F.Supp. 3d 696, 706 (N.D. Cal. 2025) .......... 7

*Hicks v. Netflix*, 472 F.Supp.3d 763, 778 (C.D.Cal. 2020) ................................................................ 8

*Lesnick v Eisenmann SE,* 374 F.Supp. 3d 923, 937 (N.D. Cal. 2019) ........................................... 8, 10

*Lingle v. Norge Div. of Magic Chef, Inc*., 486 U.S. 399, 413 (1988) ............................................... 10

*Livadas v. Bradshaw,* 512 U.S. 107, 123–24, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994)..................... 13

*Manarek v. St. Paul Fire and Marine Ins. Co.,* 519 F.3d 1025 (9th Cir. 2008).................................. 8

*McCray v Marriott Hotel Services, Inc.,* 902 F.3d 1005, 1009 (9th Cir. 2018).................................. 7

*Niehaus v Greyhound Lines, Inc.*, 173 F.3d 1207 (9th Cir. 1999) .................................................... 10

*Yap v. Mooncake Foods,* 146 F.Supp.3d 552 (S.D.N.Y. 2015) ....................................................... 14


## STATUTES


Fed. R. Civ. P. Rule 12(b)(6) ............................................................................................................ 7

NRS 608.016 ...................................................................................................................................... 5

NRS 608.018 ................................................................................................................................ 9, 12

NRS 608.020 ...................................................................................................................................... 5




RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. FACTUAL BACKGROUND AND SUMMARY OF ARGUMENT

Defendant has moved to dismiss Plaintiff's First Amended Complaint.[1] Levi argues first that pre-emption demands dismissal of Mr. Whitfield's wage and hour claims because the Collective Bargaining Agreement at issue "created" the "rights" at issue. MTD at p. 3. This is a monumentally indefensible stretch. As set out below, the rights at issue are completely unaddressed by the local or national CBAs proffered by Levi Strauss.

Setting aside the misguided pre-emption attack, at heart, Mr. Whitfield's First Amended Complaint is not complicated. He has three NRS Wage and Hour Claims and a National FLSA Collective claim. The National FLSA Collective claim is for overtime and has two components – (i) incorrect calculation of overtime by excluding bonuses from the rate of pay and (ii) nonpayment for pre-shift time that is likely overtime. The same claims are the basis of his claim for unpaid and incorrectly paid overtime under NRS 608.016. He seeks compensation for the pre-shift time again under NRS 608.016 (payment for all hours worked). Finally, he seeks recovery under NRS 608.020 for non-payment of all wages at termination of employment. *See* FAC ¶¶ 4-10; 55-77.

In support of these claims, especially with respect to the FLSA Collective, Mr. Whitfield alleges that he and all the Distribution Center Workforce were paid by a single employer doing business in Kentucky, Mississippi and Nevada – Defendant Levi Strauss. FAC ¶¶ 4; 17-20. He alleges that the entire Distribution Center Workforce was paid according to the same formula, and that formula, for *his* paychecks, did *not include* bonuses he had earned in that pay period in calculating the regular rate of pay. FAC ¶¶ 34-41. Because Mr. Whitfield's pay had incorrectly calculated overtime, it is plausible to infer that the entire Distribution Center Workforce had their regular rate of pay incorrectly calculated by the same employer issuing paychecks from San Francisco to the entire Distribution Center Workforce.

Mr. Whitfield alleges that Levi Strauss "implemented, maintained and enforced a uniform

[1] While Levi Strauss labels its motion a Motion to Dismiss, it is actually a Partial Motion to Dismiss because even if all the relief requested in the Motion were granted, the FLSA claims with respect to the Henderson facility would not be dismissed.

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

time-keeping procedure at the Henderson Distribution Center." FAC ¶24. Mr. Whitfield further alleges that Mr. Whitfield alleges that the Distribution Center Workforce in Nevada was managed same way as the Erlanger (Hebron) facility; the Gluckstadt facility (near Canton) and the Canton facility were managed. FAC ¶¶ 17-20. He explained how that time-keeping procedure resulted in unpaid pre-shift time for all workers in Nevada. FAC ¶¶ 25-10 It is plausible to infer that the facilities that are managed the same way with the same employer are subject to the same time-keeping procedure. Because Mr. Whitfield and the Distribution Center Workforce in Nevada faced uncompensated pre-shift time, it is plausible to infer that the entire Distribution Center Workforce experienced uncompensated pre-shift time.

The CBA did not create Mr. Whitfield's right to (a) overtime pay to be paid at one and half times his regular rate of pay; (b) the right to be paid for all hours worked; (c) the right to receive all wages due and owing to him at the time of the termination of his employment under Nevada Law. Nevada Revised Statutes and the Fair Labor Standards Act created those rights, that are not modified, defined or controlled by the CBAs. Mr. Whitfield's overtime and waiting time claims are therefore not pre-empted and that argument fails. No analysis of a CBA is required. Dispute resolution under the CBA is not even possible. Basic rights to be paid and to be paid for overtime cannot be privatized and killed by the LMRA.

Next, Defendant argues that there are no factual allegations to support the inclusion of all Distribution Centers in the United States in the FAC. Plaintiff has alleged that Defendant is a single employer who owns and operates its distribution centers the same way. FAC ¶¶ 17-19. Defendant's own undisputed filing (ECF 4-2) demonstrates however that one employer extends the same terms and conditions through all of its facilities. *See* Workers United and Levi Strauss & Co. United States Agreement (ECF 4-2). The Agreement covers Hebron, Kentucky and Canton Mississippi, as well as Henderson, called Sky Harbor in Levi Strauss's Agreement. (ECF-4-2 at p. NA-72). The Court can take judicial notice of a fact submitted by the Defendant in considering Defendant's motion.

## II. <u>STANDARD OF REVIEW</u>

Plaintiff notes the Defendant has incorrectly stated the standard of review for preemption three times now. (*See* ECF No. 4 at 3; ECF No. 32 at 4; ECF No. 43 at 8). Levi Strauss' *Iqbal-Twombly* bloat seems chronic despite Plaintiff's frequent reminders that Defendant must *prove* preemption under the prevailing Ninth Circuit standard. It is not an easy burden. "[N]ot every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is preempted by § 301 or other provisions of the federal labor law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). "Claims bearing no relationship to a collective-bargaining agreement beyond the fact that they are asserted by an individual covered by such an agreement are simply not pre-empted by § 301." *McCray v Marriott Hotel Services, Inc.,* 902 F.3d 1005, 1009 (9th Cir. 2018) (citations omitted). The standard that Defendant must meet is articulated in *McCray* from *Burnside v. Kiewett,* 491 F.3d 1053, 1059 (9th Cir. 2007):

> [W]hen faced with a claim that may implicate a CBA, a court must first ascertain "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA. If the right exists solely as a result of the CBA, then the claim is preempted, and the analysis ends there." … On the other hand, if the court determines that the right at issue exists independently of the CBA, it must then ask "whether the right is nevertheless substantially dependent on analysis of a collective-bargaining agreement." *Id.* (internal quotation marks omitted). A claim that substantially depends on a collective-bargaining analysis is preempted. In other words, § 301 generally preempts state law claims that implicate a collective-bargaining agreement, except for claims that (1) arise independently of a CBA, and (2) don't substantially depend on analysis of a CBA.

*Id.* at 1010 (*citations omitted)*

Defendant cuts and pastes a lot of the CBA to give an impression of substantial dependence in order to pass the *Burnside* test, but it fails. As to the first prong, Defendant has not and cannot prove that Mr. Whitfield's state law claims are derived from the CBAs. *See Hernandez v. Pacific Underground Construction,* 794 F.Supp. 3d 696, 706 (N.D. Cal. 2025) (first prong of *McCray* was not met because "… Hernandez's claims arise solely under state law. His minimum wage and expense reimbursement claims are pleaded under California state law and do not reference the CBA in any way."). As to the second prong, Defendants cannot prove that Mr. Whitfield's state law claims "substantially depend" on "analysis" of a CBA. Defendants fail to carry their burden of proving preemption.



RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

Next, Levi Strauss argues that Plaintiff's allegations with regard to the similar Kentucky and Mississippi facilities are insufficient and should be dismissed under Fed. R. Civ. P. Rule 12(b)(6). Levi Strauss's argument fails for two reasons. First, Plaintiff has "pled enough facts to state a claim to relief that is plausible on its face." *Lesnick v Eisenmann SE,* 374 F.Supp. 3d 923, 937 (N.D. Cal. 2019). Second, if the Court finds any aspect of Plaintiff's FAC insufficient, the Northern District of California in accordance with F.R.C.P. 15 follows the presumption that plaintiffs should amend rather than face final dismissal. *See Manarek v. St. Paul Fire and Marine Ins. Co.,* 519 F.3d 1025 (9th Cir. 2008). *See also Chodos v. W. Publ. Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (the 9th Circuit's policy is to permit amendment with "extreme liberality".)

Finally, here, after Defendant removed Plaintiff's case to Federal Court, Plaintiff moved to transfer to Defendant's corporate headquarters grappling with a newly-decided case on FLSA jurisdiction: *Harrington v. Cracker Barrel Old Country Store*, 142 F.4th 678 (9th Cir. 2025). Concurrently, Plaintiff was granted leave to amend to include the Kentucky and Mississippi facilities along with the Nevada facility. When a complaint, like the FAC here, raises a novel or untested theory of law, dismissal is particularly disfavored. *Hicks v. Netflix*, 472 F.Supp.3d 763, 778 (C.D.Cal. 2020) ("Plaintiff's complaint may raise a novel issue, but that does not justify dismissing it at this stage. The fact that plaintiff's claim[s] 'do[ ] not fall within the four corners of ... prior case law does not justify dismissal under Rule 12(b)(6)").

## III. <u>ARGUMENT</u>

### A. Defendants Fail To Prove Mr. Whitfield's Claims Are Pre-empted

#### 1. *The Asserted CBAs Do Not "Provide Otherwise For Overtime" In Any Way Applicable To Plaintiff's Overtime Claims*

Defendant urges the Court to undertake the two-prong analysis used in *Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053 (9th Cir. 2007) in order to find preemption and therefore dismissal. *Burnside,* however, requires this Court to reject their preemption argument. The first prong of *Burnside* requires a determination "whether the asserted cause of action involves ***a right conferred upon an employee by virtue of state law***, not by a CBA." *See Burnside*, 491 F.3d at 1060 (emphasis added). Here, Plaintiff's first three causes of action explicitly reference the state law on which they



RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

are based. The CBAs do not create Mr. Whitfield's right to be paid for all hours worked, do not address how the regular wage rate is determined for calculation of overtime *or create his right to be paid overtime* and do not address his statutory right to payment of all final wages due and owing. *See* ECF No. 44-1.

This Court can and should stop at the first prong of *Burnside* to reject Defendant's preemption arguments as to Mr. Whitfield's First through Third Causes of Action. Nothing in the CBA addresses wages for all hours worked and wages at termination. Defendants did find a mention of the word 'overtime' in the Regional CBA so review of the second prong of *Burnside* is required for the Second Cause of Action for Overtime. The second prong is a determination of "substantial dependence":

> Second, to determine whether a state law right is "substantially dependent" on the terms of a CBA, *see Caterpillar,* 482 U.S. at 394, 107 S.Ct. 2425, the Court directs us to decide whether the claim can be resolved by "look[ing] to" versus interpreting the CBA, *see Livadas,* 512 U.S. at 125, 114 S.Ct. 2068; *Cramer,* 255 F.3d at 691 (citing *Balcorta,* 208 F.3d at 1108–09). If the latter, the claim is pre-empted; if the former, it is not.

*Burnside* at 1061. Defendant cuts and pastes the closest thing it could find to a relevant passage into its Motion at p. 10: Section 5.2 of the Regional CBA. Section 5.2 divides "regularly scheduled work hours" from "overtime" in a manner that deviates slightly from NRS 608.018 and provides that in some situations, two times the rate of pay is the "overtime" rate. Def.'s Mot. Dismiss p. 10. There is nothing in the cut-and-paste about Mr. Whitfield's overtime claims: that it was not calculated correctly, or that the Waiting Time or Pre-Shift time claim would drive Mr. Whitfield into overtime from his regularly scheduled hours. It uses a similar term of art from NRS 608.018 'rate of pay'. Neither Defendant's local or North American CBAs define rate of pay. Without a competing or contrary definition, the wage and hour laws must be interpreted, not the other way around. In both, there is regular time and there is overtime. Mr. Whitfield's claim does not involve "looking" at the CBA to see which is which for a given hour, because his pay records demonstrate that in nearly every pay period, he was paid overtime. *See* ECF No. 58 and No. 58-1 filed herewith (Mr. Whitfield's Pay Records). His claim that the regular rate of pay – including non-discretionary bonuses - was not used in his overtime rate calculation requires no reference to the CBA. His claim that the Waiting Time



RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

and Pre-Shift Time was not paid and should be compensated as overtime requires no reference to or interpretation of the CBA.

Mr. Whitfield's right to overtime at the correct rate is not "substantially dependent" on the terms of the CBA. No interpretation of Section 5.2 is required to decide Mr. Whitfield's overtime claim because nothing in the cut and pasted section makes any representation about the inclusion or lack of inclusion of non-discretionary bonuses in his regular rate of pay. For Mr. Whitfield's overtime claim to be pre-empted, *Burnside* instructs "a court may *look to* "—not interpret—"the CBA[s] to determine whether [they] contain[ ] a clear and unmistakable waiver of state law rights." *Id.* at 1071 (citations omitted; emphasis in original). Where is that unmistakable waiver that gives Defendant the right to take away Mr. Whitfield's state law claims? Moreover, *Plaintiff* does not bear the burden of proof that his NRS Claims are *not* pre-empted, but provides much more analysis of Section 5.2 than the Defendant who *does* bears the burden of demonstrating pre-emption, and has pointed to no waiver.

Defendant fails quite profoundly. Defendant makes no attempt to show how Plaintiff's causes of action under the NRS wage and hour laws are actually "state contract law claims" subject to Section 301 preemption. Nor does Defendant show how any of Plaintiff's claims "are based directly on rights created by a collective bargaining agreement" or "substantially dependent on an interpretation of a collective bargaining agreement." *See Niehaus v Greyhound Lines, Inc.*, 173 F.3d 1207 (9th Cir. 1999).) Defendant spends one paragraph on substantial dependence (ECF No. 43 (Def.'s Mot. Dismiss) at p. 13). Instead of showing how the CBAs need to be consulted, Defendant lists twenty irrelevant subtopics in the CBAs such as jury duty pay and trainer premiums. These are not the subject of Mr. Whitfield's Complaint and listing near-misses does not make up a showing of "substantial dependence". Instead, after the list, Defendant generally and conclusory asserts that "[t]he very basis of Plaintiff's claims are reliant on the CBAs and the interpretation thereof." *Id.* Yet under the *Burnside* methodology that the Defendant urges the Court to use, Defendant provides no reason to agree with this naked assertion.

To determine whether a state-law right is "substantially dependent" on the terms of the CBA, the Court must decide whether the claim requires "interpretation" of the CBA. *See Lingle v. Norge*

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

*Div. of Magic Chef, Inc*., 486 U.S. 399, 413 (1988). Merely consulting or "looking to" the CBA in order to adjudicate a state-law claim does not require preemption. *See Burnside*, 491 F.3d at 1059-60. Hence, "when the meaning of contract terms is not the subject of dispute, the bare fact that a collective bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994); *see also Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985) (declaring that "nonnegotiable state-law rights . . . independent of any right established by contract" are not preempted).

Here there is no dispute over the meaning of any CBA terms. Even if Defendant's CBA Exhibits will be consulted, that still would not require Section 301 preemption. *See Livadas*, 512 U.S. at 124. As the movant, it is Defendant's burden to show how each of Plaintiff's three causes of action would require the Court to analyze and "interpret" the CBA. Defendant got farther with the Second Cause of Action than the First or Third, but fails at "substantial dependence" second prong of *Burnside.*

**2. *Even if Plaintiff's State Law Claims were "Directly Based" Or "Substantially Dependent" On Defendant's CBAs With The Union, Supreme Court Precedent Requires They Not Be Dismissed.***

Defendant describes the dispute resolution processes in the CBAs but never expressly says that Mr. Whitfield would have to follow this dispute resolution process or that his only remedy is that black hole of arbitration described in the CBAs. Def.'s Mot. Dismiss at 14. That is because Defendant can't make that argument as a matter of law or fact. With a magician's misdirection, it says that the dispute resolution process is for "potential violation of the CBA." *Id.* Defendant however does not point out what exactly in Mr. Whitfield's first three Causes of Action constitutes a CBA violation. Merely reporting that there *is* a dispute resolution procedure is grossly insufficient for preemption. Defendant intimates that Whitfield's only option is to go to the Union, yet the Supreme Court has made it clear that union employees (like Plaintiff) have rights beyond the CBA and Section 301 – to choose to sue only the employer or to dispute with the Union *and* sue the employer:

> The development of the law in the § 301 context is not to the contrary. We have recognized that although a § 301 suit against the employer and a fair representation claim against the union are "inextricably interdependent," *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 66-67 (1981) (Stewart, J., concurring in judgment), breach of the duty of fair



RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

> representation is a cause of action separate from the claim against the employer. *See DelCostello v. Teamsters*, 462 U.S. 151, 164, 165 (1983) (noting that a hybrid fair representation/ § 301 suit "comprises two causes of action" and that "[t]he employee may, if he chooses, sue one defendant and not the other"); *United Parcel Service*, 451 U.S., at 66 (Stewart, J., concurring in judgment) (§ 301 and fair representation claim each has "its own discrete jurisdictional base"); id., at 73, n. 2 (STEVENS, J., concurring in part and dissenting in part) ("[D]espite this close relationship, the two claims are not inseparable. Indeed, although the employee in this case chose to sue both the employer and the union, he was not required to do so; he was free to institute suit against either one as the sole defendant").

*Breininger v. Sheet Metal Workers*, 493 U.S. 67, 84 n.8 (1989) (italics in original) (emphasis added). State law still provides a framework for overtime rights in the absence of a CBA or where the CBA does not "provide otherwise" for overtime. *See* NRS 608.018(3)(e). Defendant proffers two CBAs. Nothing in either CBA "provides otherwise."

### *3. Preemption Would "Disadvantage Unionized Employees Simply For Being Covered by A CBA*

It is not only the methodology of *Burnside* that is relevant, but the policy considerations and the outcome. In *Burnside,* the Ninth Circuit reversed a district court's finding of pre-emption in a situation strikingly similar to Mr. Whitfield's. Mr. Burnside sought compensation under state law for mandatory uncompensated time spent traveling from site to site. His claim was not pre-empted because "resolution of claims to compensation for that time did not "substantially depend" on interpretation of terms of the CBA. *Id.* at 1060. The Ninth Circuit explained the policy behind its reversal of the district court:

> The result would be that simply because he worked at a unionized workplace, Burnside would have *neither* the right to travel time *nor* any benefit obtained in exchange for it. This conclusion could not be reconciled with *Livadas*'s disapproval of approaches to labor preemption doctrine that disadvantage unionized employees simply for being covered by a CBA, regardless of its terms. *See* 512 U.S. at 129, 114 S.Ct. 2068 … After all, ***the Supreme Court has termed section 301 preemption but an "acorn," not a "mighty oak."***

*Id* at 1069 (some citations omitted) (emphasis supplied).

### *4. Firestone Does Not Permit Section 301 Preemption*

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

Finally, *Firestone v. Southern California Gas Co.*, 219 F.3d 1063 (9th Cir. 2000) support Defendants' position that the calculation of the regular wage rate for purposes of overtime is pre-empted. *Firestone's* CBA had a complicated calculation for premium pay[2] that directly contrasted with the California law, the *Firestone* court found preemption for overtime calculation but acknowledge that *Livadas v. Bradshaw,* 512 U.S. 107, 123–24, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994) controlled in circumstances like Mr. Whitfield's:

> In that case, the Supreme Court held that a claim based on a state requirement for timely payment of severance pay was not preempted, because resolving the claim did not require any interpretation of the collective bargaining agreement; it required instead reference only to a calendar and the undisputed wage rate. *See* 512 U.S. at 121–25, 114 S.Ct. 2068. There were no terms in the statute to be interpreted with reference to the collective bargaining agreement, nor were there any terms of the collective bargaining agreement to be interpreted in light of the statute.

*Id.* at 1067. Again, Defendant has not met the burden of proof as to how or why any of Mr. Whitfield's causes of action depend on rights created by its CBAs (they do not) or even require a reference to the CBA.

**B. Mr. Whitfield Has Plausibly Alleged Similar Practices Across The Distribution Center Workforce**

Defendant pronounces the proposed First Amended Complaint as insufficiently alleging similarity between the Henderson Distribution Center and the Canton, Gluckstadt and Hebron Distribution Center. Plaintiff has however alleged the same employer, the same workforce, the same union agreement and the same payment practices across the entire workforce and for those reasons his claim for relief is plausible on its face.

Defendant has provided the Court with a Collective Bargaining Agreement that is entitled "*North American Agreement*". (ECF No. 44-1). This demonstrates Levi Strauss in San Francisco is

[2] The court in *Firestone* was required to integrate a complicated "premium wage" calculation formula in the CBA with a California law it described at p. 1066: "[a]n overtime exemption provision provides that the section quoted above "shall not apply to any employee covered by a collective bargaining agreement if said agreement provides premium wage rates for overtime work and a cash wage rate for such employee of not less than one dollar ($1.00) per hour more than the minimum wage." 8 Cal.Code Reg. § 11040(3)(D)" *Firestone* is inapposite to Mr. Whitfield's claims.



RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

the employer across facilities. Plaintiff has provided his paychecks, which are issued out of San Francisco (ECF No. 58-1, pp. 4-114). There is no reason to presume that the pay practices differ across the Distribution Center Workforce especially when there is one employer – Levi Strauss in San Franscisco. Further, Defendants' own evidence demonstrates that Levi Strauss dealt with the three facilities similarly across the board. *See, e.g.,* ECF No. 44-1 at p. 38 (same holidays recognized across the Hebron, Canton and Henderson facilities); Id. at p. 78 (signatories from Hebron, Canton and Henderson). Despite the documents Defendant submits showing common ownership, policies and control, it alleges without proof that the facilities are very very different.

Defendant then cites a string of cases seeking dismissal with prejudice[3] – in all but one Defendants demanded dismissal and the Court instead granted leave to amend.[4] In reality, in the Ninth Circuit cross-facility allegations are often tested not at a motion to dismiss, but rather at Plaintiff's Motion for Notice to the Collective (or "conditional certification") *See Colson v Avnet,* 687 F.Supp.2d 914 (D. Ariz. 2014) (denying defendants' motion to dismiss FLSA claims of national collective: "[t]o the extent Defendant is asking the Court to perform a more searching review of Plaintiff's factual allegations than what is normally performed at a motion to dismiss, the Court finds that such a review is more appropriate for resolution of Plaintiff's Motion for Collective Action Notification—or perhaps, if required, a motion for summary judgment").

In *Yap v. Mooncake Foods,* 146 F.Supp.3d 552 (S.D.N.Y. 2015) two employees sued three individuals who owned and controlled a chain of four restaurants – Mooncake Foods. When plaintiff

---

[3] Defendant styles its Motion as one seeking dismissal of all claims raised against it, but makes no argument that the FLSA claims with respect to the Henderson facility are inadequately alleged.

[4] *See Erblich v. Sasaki,* 2023 WL 4186007 *4 (N.D. Cal. 2023)(plaintiff given leave to file amended complaint); *Flores v Starwood Hotels & Resorts Worldwide, Inc,* 2015 WL 12912337 *4 (C.D. Cal. 2015(SAC dismissed with leave to amend); *Mendez v. H.J. Heinz, LP*, 2012 WL 12888526 *2 (C.D. Cal. 2012)(complaint dismissed with leave to amend"); *Taylor v. Penski Logistics, LLV,* 2021 WL 4288525 (C.D. Cal. 2021)(court dismissed without prejudice and granted leave to amend); *Alvarado v. Wal-Mart Assocs., Inc.* 2020 WL 6532868 (C.D. Cal 2020)(denying leave to amend only because "Plaintiff has filed four amended complaints, with the most recent largely ignoring Judge Fischer's detailed framework for how to remedy the deficiencies, the Court finds that dismissal with prejudice is warranted"); *Zamora v. Penske Truck Leasing Co., L.P.,* 2021 WL 809403 *3 (C.D. Cal. 2021)("[t]he class allegations in Plaintiffs' FAC are dismissed with leave to amend")

moved for conditional certification, the court granted it. The plaintiff had made modest factual showing he was similarly situated to other delivery people and made sufficient factual showing he was similarly situated to other chefs at all four restaurant locations. The court's analysis is helpful here:

> Because minimal evidence is available at this early stage of the proceedings, and because the Court "retain[s] the ability to reevaluate whether the plaintiffs are similarly situated," Plaintiffs face a "'relatively lenient evidentiary standard... They must only make "a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" …).

*Id.* at 560 (citations omitted; cleaned up). *Yap* was decided at the 'conditional certification' phase, so Yap's allegations about the other facilities survived the pleadings stage, even though the Yap plaintiffs never worked at two of the four restaurants.[5] Here Defendants have jumped in before Plaintiff moves for Notice for the Collective to dismiss – even though Plaintiff has alleged that all of the Distribution Center Workforce was subject to the same unlawful policy or practice. Similarly, in *Austin v. Ken's Food, Inc.,* 771 F.Supp.3d 1 (D. Mass. 2025), the court granted conditional certification when plaintiffs had alleged they "are all employed by one company, are all hourly employees, all hold similar positions with similar duties (manufacturing), and all allege Defendant's failure to compensate for time spent on the same activities – donning, doffing, and walking back and forth from the locker rooms to the manufacturing floor." *Id.* *7. It was of no moment that plaintiffs had not worked at all the facilities, nor was the existence of a CBA at one but not of all the facilities an impediment to preliminary certification. Id. *7-8 (further rejecting defendant's argument that certification must be rejected when proposed class member "have different duties, different levels of required PPE, different uniform policies and different timekeeping practices … those arguments are more appropriately raised at the decertification stage."). *Fernandez v. Tox Corporation,* 677 F. Supp. 3d 1089, 1098 (denying defendant's motion to dismiss and noting district courts "routinely will grant

---

[5] *Id.* at 561. ("Defendants first argue that the Plaintiffs cannot represent *any* employees from MCF Chelsea or MCF FiDi because the Plaintiffs were themselves never employees at those two restaurants. …This argument has no merit, however, because "[i]n this Circuit, courts have regularly found Plaintiffs to be similarly situated to employees at locations where they did not work, provided that the plaintiffs demonstrate that they were all subject to the same allegedly unlawful policy or practice.")



RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

conditional certification to a nationwide opt-in collective even when the plaintiff does not have evidence of the challenged policy or practice in every location of the defendants' operations")

**IV. CONCLUSION**

Levi Strauss has kicked a lot of dust in the air and called it powerful, but a dispassionate review of what has settled on the ground shows Levi Strauss has produced nothing here that requires Mr. Whitfield's claims to be dismissed. And of course, Levi Strauss never denies the wage theft and overtime miscalculation. Levi Strauss does not deny that the Distribution Center Workforce is paid similarly and treated uniformly across Kentucky, Mississippi, and Nevada. For the reasons set forth above, Plaintiff respectfully requests that this Court deny Defendant's Motion to Dismiss.

DATED: March 9, 2026

Respectfully Submitted,

**RAFII & ASSOCIATES, P.C.**

/s/ Rachel Mariner

Rachel Mariner (*Admitted Pro Hac Vice)*
1120 N. Town Center Dr., Suite 130
Las Vegas, Nevada 89144
Telephone: 725.245.6056

Robert Montes, Jr., CA Bar No. 159137
9100 Wilshire Blvd., Suite 465E
Beverly Hills, CA 90212
Telephone: 310.777.7877

*Attorneys for Jermaine Whitfield, on behalf of himself and all others similarly situated*

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

## CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2026, I caused service of a true and correct copy of the foregoing ***PLAINTIFF'S OPPOSITION TO DEFENDANT LEVI STRAUSS & CO.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT*** to be made by U.S. District Court's CM/ECF system, upon all parties registered to use this service, and listed as electronic service recipients herein, Email and/or via U.S. mail.

Anthony L. Martin
Noel M. Hernandez
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
10801 W. Charleston Blvd., Suite 500
Las Vegas, NV 89135
Anthony.martin@ogletreedeakins.com
Noel.hernandez@ogletreedeakins.com

*/s/ Ricardo Nova*
An employee of RAFII & ASSOCIATES, P.C.