ANTHONY L. MARTIN (*Pro Hac Vice*)
anthony.martin@ogletree.com
NOEL M. HERNANDEZ, CA Bar No. 310521
noel.hernandez@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
10801 W. Charleston Blvd., Suite 500
Las Vegas, NV 89135
Telephone: 702.369.6800
Facsimile: 702.369.6888

JENNY J. LIAO, CA Bar No. 337719
jenny.liao@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
One Embarcadero Center, Suite 900
San Francisco, CA 94111
Telephone: 415.442.4810
Facsimile: 415.442.4870

Attorneys for Defendant
LEVI STRAUSS & CO.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

JERMAINE WHITFIELD, on behalf of himself and others similarly situated,

Plaintiffs,

v.

LEVI STRAUSS & CO.; and DOES 1 through 50, inclusive,

Defendants.

Case No. 3:26-cv-01300-RFL

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR NOTICE TO FLSA COLLECTIVE PURSUANT TO 29 U.S.C. § 216(B)**

Date: June 30, 2026
Time: 10:00 AM
Place: Courtroom 15 - 18th Floor

Complaint Filed: 6/2/2025
Trial Date: None Set
Judge: Hon. Rita F. Lin
Courtroom 15 – 18th Floor

Defendant Levi Strauss & Co. ("Defendant" or "Levi"), by and through undersigned counsel, hereby files its Opposition to Plaintiff Jermaine Whitfield's ("Plaintiff" or "Whitfield") Motion for Notice to FLSA Collective (the "Motion") (ECF No. 76).

This Response is made and based on the records, pleadings and papers on file herein, the Declaration of Lisa Weaver ("Weaver Decl.") attached hereto as **Exhibit A** ("Ex. A") and Declaration of LaMetris Moore ("Moore Decl.") attached hereto as **Exhibit B** ("Ex. B"), the Memorandum of Points and Authorities in support hereof, and any further argument as the Court may deem appropriate.

DATED: June 2, 2026

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: */s/ Noel M. Hernandez*
ANTHONY L. MARTIN (*Pro Hac Vice*)
NOEL M. HERNANDEZ
JENNY J. LIAO

Attorneys for Defendant
LEVI STRAUSS & CO.

## TABLE OF CONTENTS

Page

I. INTRODUCTION ........ 7

II. STATEMENT OF FACTS AND PROCEDURAL SUMMARY ........ 8

A. Plaintiff Has Delayed in Filing His Motion for Notice to the FLSA Collective ........ 8

B. The Distribution Centers Vary ........ 9

C. Plaintiff's Allegations ........ 11

III. LEGAL ARGUMENT ........ 12

A. Legal Standard ........ 12

B. Plaintiffs and The Proposed Collective Action Members are Not Similarly Situated; Plaintiffs Are Not Even Similarly Situated Amongst Themselves ........ 12

1. Plaintiff's Evidence is Confined to Two Facilities and Does Not Support a Nationwide Collective ........ 13

C. Substantial Allegations of a Common Decision, Policy, or Plan Do Not Exist ........ 13

1. No Common Policy Exists Regarding the Regular Rate of Pay ........ 14

2. No Common Policy Exists Regarding Pre-Shift and Post-Shift Compensable Time ........ 15

3. Plaintiff's Remaining Arguments Do Not Establish a Common Policy ........ 16

D. If Certified, the Collective Should Be Limited to the Henderson DC ........ 17

E. The Court Should Deny Plaintiff's Request for a Three-Year Notice Period Based on Alleged Willfulness ........ 18

F. The Court Should Deny Equitable Tolling Because Rare and Exceptional Circumstances Do Not Exist; Any Delay Is From Plaintiff's Conduct ........ 18

G. To the Extent the Court Grants Any Type of Collective Action, Plaintiff's Proposed Notice Requires Modification ........ 19

1. Plaintiff's Notice Inaccurately Describes the Class ........ 19

2. The Notice Incorrectly Suggests the Need to Be Represented By Plaintiff's Counsel ........ 19

3. The Notice Fails to Inform Putative Plaintiffs About Fees and Costs ........ 20

4. The Notice Does Not Adequately Describe Putative Plaintiffs' Role in the Lawsuit ........ 20

5. Notice Improperly Encourages Joining the Lawsuit ........ 20

6. Levi's Position Should Be More Adequately Represented ........ 21

IV. CONCLUSION ........ 21

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Adams v. Inter-Con Sec. Sys., Inc.*,
242 F.R.D. 530 (N.D. Cal. 2007) .......... 18, 19, 21, 22

*Adedapoidle-Tyehimba v. Crunch, LLC*,
2013 WL 4082137 (N.D. Cal. Aug. 9, 2013) .......... 20

*Alvarez v. IBP, Inc.*,
339 F.3d 894 (9th Cir. 2003) .......... 19

*Bernard v. Household Int'l, Inc.*,
231 F.Supp.2d 433 (E.D. Va. 2002) .......... 14

*Bonilla v. Las Vegas Cigar Co.*,
61 F. Supp. 2d 1129, 1136-39 (D. Nev. 1999) .......... 20

*Campbell v. City of Los Angeles*,
903 F.3d 1090 (9th Cir. 2018) .......... 14, 16

*Cardoza v. Bloomin Brands, Inc.*,
2014 WL 5454178 (D. Nev. Oct. 24, 2014) .......... 22

*Colson v. Avent, Inc.*,
2010 WL 339047 (D. Ariz. Jan. 27, 2010) .......... 13

*Daniels v. Aeropostale West, Inc.*,
2013 WL 1758891, *5 (N.D. Cal. Apr. 24, 2013) .......... 21

*Davis, III v. Westgate Planet Hollywood Las Vegas, LLC*,
2009 WL 102735 (D. Nev. 2009) .......... 18

*Delara v. Diamond Resorts Int'l Marketing, Inc.*,
2020 WL 2085957 (D. Nev. Apr. 30, 2020) .......... 22

*Doe v. Advanced Textile Corp.*,
214 F.3d 1058 (9th Cir. 2000) .......... 13

*Fetrow-Fix v. Harrah's Entertainment, Inc.*,
2011 WL 6938594 (D. Nev. Dec. 30, 2011) .......... 13, 18

*Frohm v. City & Cnty. of San Francisco*,
No. 22-CV-06002-JST, 2025 WL 1397203 (N.D. Cal. May 14, 2025) .......... 19

*Genesis Healthcare Corp. v. Symczyk*,
133 S. Ct. 1523 (2013) .......... 21

*Hinojos v. Home Depot, Inc.*,
2006 WL 3712944 (D. Nev. Dec. 1, 2006) .......... 18

*Hipp v. Liberty Nat'l Life Ins. Co.*,
164 F.R.D. 574 (M.D. Fla. 1996) .......... 22

*Hoffman-La Roche Inc. v. Sperling*,
493 U.S. 165 (1989) .......... 13, 22

*Lescinsky v. Clark County School District*,
539 F. Supp.3d 1121 (D. Nev. 2021) .......... 21

*Litvinova v. City & Cnty. of San Francisco*,
2019 WL 1975438 (N.D. Cal. Jan. 3, 2019) .......... 14, 16, 17

*Reno v. Western Cab Company*,
2019 WL 8062561 (D. Nev. Jan. 17, 2019) .......... 21

*Schemkes v. Presidential Limousine*,
2011 WL 868182 (D. Nev. Mar. 10, 2011) .......... 21

*Senne v. Kansas City Royals Baseball Corp.*,
934 F.3d 918 (9th Cir. 2022) .......... 13, 15

*Shaia v. Harvest Mgmt. Sub LLC*,
2015 WL 1744341 (N.D. Cal. Apr. 15, 2015) .......... 20

*Stoll v. Runyon*,
165 F.3d 1238 (9th Cir. 1999) .......... 20

*Torres v. CSK Auto, Inc.*,
2003 WL 24330020 (W.D. Tex. Dec. 17, 2003) .......... 14, 18

**Federal Statutes**

29 U.S.C.
§ 207(e) .......... 15, 16
§ 216(b) .......... 13, 21
§ 255(a) .......... 19, 20
§ 256(b) .......... 20

FLSA, 29 U.S.C.
§ 207 .......... 12

**Other State Statutes**

NRS 608.016 .......... 12

NRS 608.020 .......... 12

**Other Authorities**

Fed. R. Evid. 802 .......... 12

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

More than fourteen months after filing this action, Plaintiff Jermaine Whitfield now seeks conditional certification of a sweeping, nationwide FLSA collective encompassing "all current and former hourly employees of Levi Strauss & Co. who work or worked at Levi Strauss Distribution Centers ('DCs') in the United States at any time during the period from March 3, 2022 until the judgment in this action." (Motion, ECF No. 76, p. 13:4-7.) Yet Plaintiff's evidentiary support consists of just two declarations: one from Whitfield, who worked only at the Henderson DC and left over three years ago, and one from Tracy South, who works at the Hebron DC and has never set foot in the Erlanger or Canton DCs. Plaintiff asks this Court to approve dissemination of notice, authorize a three-year notice period based on willfulness, and equitably toll the statute of limitations. (*Id.*, p. 20:2-12.) The Motion should be denied in its entirety, or at a minimum, the collective should be limited to the Henderson DC.

Although the standard at this stage is lenient, it is not toothless. Plaintiff must make a "modest factual showing" that he and potential collective members are "similarly situated" because they were "victims of a common policy or plan that violated the law." Plaintiff has failed to make that showing for any facility beyond the Henderson DC. He has not identified any common policy between the DCs regarding pre-shift time compensation. The way time is recorded and paid, the calculations used to determine pay, including the regular rate, shift differentials, overtime, and bonus inclusion, differ at each facility. The local collective bargaining agreements at the Henderson, Hebron, and Canton DCs are individual contracts, and the Erlanger DC has no CBA at all. There is no commonality between the facilities.

Plaintiff has presented zero evidence regarding the Erlanger and Canton DCs. South admits she has "never been" to the Erlanger DC and merely speculates it runs the same way as Hebron "because of the Union" despite the fact that the Erlanger DC is not even unionized. Plaintiff's remaining evidentiary support consists of an anonymous Indeed review that is inadmissible hearsay. As set forth below, the differences in union status, job classifications, attendance policies, timekeeping practices, pay structures, benefits, equipment, and operational independence

demonstrate that individualized inquiries would be required to assess any wage-and-hour claims at each facility.

Finally, Plaintiff seeks to toll the statute of limitations for putative opt-in Plaintiffs but offers no proof of the rare or exceptional circumstances required for equitable tolling. To the contrary, Plaintiff is the primary cause of delay: he was ordered to file his Motion by the Nevada court in October 2025, and again in February 2026, but failed to do so. Fourteen months into the litigation, Plaintiff seeks to shift the consequences of his own dilatory tactics onto Levi. The delay Plaintiff himself caused does not amount to extraordinary circumstances justifying tolling.

## II. STATEMENT OF FACTS AND PROCEDURAL SUMMARY

### A. Plaintiff Has Delayed in Filing His Motion for Notice to the FLSA Collective

Plaintiff originally filed his Complaint in the Eighth Judicial District Court in Clark County, Nevada, on March 3, 2025. (Complaint, ECF No. 1-2.) On July 3, 2025, Levi removed the action to the United States District Court for the District of Nevada. (Removal, ECF No. 1.) On July 10, 2025, Levi filed its first Motion to Dismiss.

On September 4, 2025, the Nevada court ordered Plaintiff to file his FLSA motion by ***October 8, 2025***. (Order, ECF No. 17.) Plaintiff obtained a one-week extension to October 15, 2025. (Stipulation, ECF No. 18.) However, instead of filing his Motion, Plaintiff filed a Motion to Extend Time, a Motion for Leave to File Amended Complaint, and a Motion to Transfer Venue. (Motion, ECF No. 24.) Levi opposed, arguing that Plaintiff should immediately file his FLSA Motion. (Opposition, ECF No. 26.)

On December 17, 2025, the Nevada court granted Plaintiff's Motion for Leave to Amend, rendering Levi's initial Motion to Dismiss moot. (Order, ECF No. 30.) Plaintiff filed his FAC on December 19, 2025. (FAC, ECF No. 31.) On January 2, 2026, Levi filed its Motion to Dismiss the FAC. (Motion, ECF No. 32.) On February 9, 2026, the Nevada court granted Plaintiff's Motion to Transfer, stating that "Whitfield must promptly file a motion regarding notice of the FLSA collective action in the new district." (Order, ECF No. 39, p. 7:12-13.) Levi urged Plaintiff to immediately file his motion on March 31, 2026. (Joint Case Management Statement, ECF No. 63, Section 9.)

On February 23, 2026, Levi filed its Motion to Dismiss in this Court. (Motion, ECF No. 43.) On April 21, 2026, this Court granted in part and denied in part Levi's Motion to Dismiss, dismissing Plaintiff's NRS overtime claim and noting that "a challenge to the scope of the FLSA collective is more properly addressed in adjudicating a motion for notice to the collective." (Order, ECF No. 70.) Despite the Nevada court's instruction to "promptly file," Plaintiff did not file the instant Motion until May 12, 2026, and only after this Court ordered him to do so. (Scheduling Order, ECF No. 71.)

**B. The Distribution Centers Vary**

Levi's DCs are operationally independent facilities with distinct employment structures, policies, and workplace configurations, and no single, common policy governing timekeeping, pay, security, or pre-shift procedures. Specifically:

***Different Employment Framework.*** The Henderson DC, located in Henderson, Nevada and the Hebron DC, located in Kentucky, are unionized facilities operating under separate local agreements with different local unions. (Ex. A, Weaver Decl., ¶¶ 1, 3; Ex. B, Moore Decl. ¶¶ 1-2.) The Canton DC, located in Canton, Mississippi, had its own separate local agreement until its closure in 2025. (Ex. A, Weaver Decl., ¶¶ 3, 21; Ex. B, Moore Decl. ¶ 2.) These unionized facilities were governed by a North American Agreement ("NAA") until June 30, 2025, but the NAA expressly provided that key employment terms, including schedule implementation, overtime pay, start times, lunches and breaks, and flextime, were to be "negotiated at the local level." (Ex. A, Weaver Decl., ¶ 6, **Exhibit A-1,** Article 5, ¶ 7; Ex. B, Moore Decl. ¶ 4.) The Erlanger DC, located in Erlanger, Kentucky, is not unionized and operates under a fundamentally different employment structure with different benefits, timekeeping practices, job titles, and schedules. (Ex. A, Weaver Decl., ¶¶ 1, 4-5.) Erlanger employees hold only three job titles entirely different from the union classifications at Henderson and Hebron. (Ex. A, Weaver Decl., ¶¶ 10-11; Ex. B, Moore Decl. ¶ 6.)

Currently, no two DCs share the same governing employment framework: Henderson has a standalone CBA negotiated in 2025, Erlanger has never had a CBA, Hebron operates under extensions of the prior NAA, and Canton is closed. (Ex. A, Weaver Decl., ¶¶ 5-6, 21; Ex. B, Moore Decl. ¶ 2.) ***In short, there is no evidence that any two DCs share the same governing employment framework***.

***Building Entry.*** Building entry procedures differ materially due to different building layouts. The Henderson DC has 13 security badge readers. (Ex. B, Moore Decl., ¶ 13.) The Hebron DC has at least 5 time clocks. (Ex. A, Weaver Decl., ¶ 19.) The Erlanger DC requires employees to push a buzzer to be let into the facility, a procedure that exists at no other DC, and has only 4 time clocks. (*Id.*, ¶ 20.) These materially different configurations undermine any inference of a uniform "waiting time" experience across facilities.

***Pay Practices.*** The Hebron DC processes payroll locally with manual review before transmitting to corporate, while the Erlanger DC's payroll goes directly to corporate with no manual intervention. (Ex. A, Weaver Decl., ¶¶ 15-16.) Hebron employees are paid weekly; Erlanger employees were originally paid biweekly and only converted to weekly in 2024. (*Id.*, ¶ 17.) Pay rates are set under separate budgets with no centralized coordination. (Ex. A, Weaver Decl., ¶ 14; Ex. B, Moore Decl., ¶¶ 9-10.)

***Bonus Structures.*** The DC AIP bonus, central to Plaintiff's regular-rate claim, is not applied consistently across DCs. The NAA expressly provides it is applied at a local level, and part of the DC AIP is based on facility-specific cost-per-unit metrics. (Ex. A, Weaver Decl., ¶ 21; Ex. B, Moore Decl. ¶ 5.) The Hebron DC includes a third component not used at Henderson. (*Id.*) ***The Erlanger DC hourly associates receive no bonuses at all.*** (Ex. A, Weaver Decl., ¶ 22.)

***Pay Rates and Shift Differentials.*** Pay rates and shift differentials are negotiated locally under each DC's local CBA. (Ex. A, Weaver Decl., ¶ 14; Ex. B, Moore Decl. ¶¶ 8-12.) Unionized DCs have unique components, including shift differentials, training pay, hostler duties pay, and show-up pay, none of which exist at the Erlanger DC or are calculated the same way at Hebron. (Ex. A, Weaver Decl., ¶¶ 23-24; Ex. B, Moore Decl. ¶¶ 10-12.)

***Shift Structures and Schedules.*** The Hebron DC runs 10-hour shifts (Monday-Thursday) and 12-hour weekend shifts (Friday–Sunday). (Ex. A, Weaver Decl., ¶ 12.) The Erlanger DC operates only one shift: Monday through Friday, 8-hour shifts. (*Id.*) The Henderson DC has at least five different schedules. (Ex. B, Moore Decl. ¶ 7.)

***Equipment and Work Assignments.*** The Hebron DC has rotating stack storage units that exist at no other facility and restricts employees to specific departments. (Ex. A, Weaver Decl., ¶¶

25, 28.) Erlanger employees are general warehouse associates who can work anywhere in the facility. (*Id.*, ¶ 26.) Training is facility and role specific. (Ex. A, Weaver Decl., ¶ 28; Ex. B, Moore Decl. ¶ 6.)

**C. Plaintiff's Allegations**

Plaintiff's FAC asserts three causes of action: (1) Failure to Pay Wages under NRS 608.016; (2) Failure to Timely Pay All Wages at Termination under NRS 608.020; and (3) Failure to Pay Overtime under the FLSA, 29 U.S.C. § 207. The first two are limited to Henderson DC employees. The third, at issue here, seeks to include employees at DCs in Kentucky and Mississippi.

Plaintiff's FLSA claim rests on two theories: (1) that Levi failed to include non-discretionary bonus pay in calculating employees' regular rate for overtime; and (2) that Levi failed to compensate employees for pre-shift and post-shift time, including time spent waiting in line at badge readers. All operative factual allegations regarding timekeeping, pre-shift waiting time, badge-reader shortages, and overtime calculations are confined to the Henderson DC.

In support of his Motion, Plaintiff submits declarations from Whitfield and Tracey South. Whitfield describes his experience at the Henderson DC exclusively, concedes he has not worked there in over three years, and is "not in contact with the current workers there." (Whitfield Decl., ECF No. 80, ¶¶ 10, 14-21, 26-29, 31.)

South describes her experience at the Hebron DC only and concedes she has "never been" to the Erlanger DC, yet states: "I think because of the Union, it has to run the same way as Hebron DC." *(South Decl., ECF No. 79,* ¶¶ 11, 35.)

Plaintiff also submits the Declaration of Rachel Mariner, attaching an anonymous Indeed review, job postings, discovery excerpts, and expired Local CBAs. (ECF Nos. 77-7, 77-8, 77-9.) The Indeed review is inadmissible hearsay under Fed. R. Evid. 802—an anonymous, unsworn, out-of-court statement by a purported "Maintenance Technician/Engineer from the Kentucky workforce," a classification entirely different from the hourly warehouse workers who comprise the proposed collective. (Mariner Decl., ECF No. 77, Ex. A-8.) The review does not even identify which Kentucky facility the author worked at. ***Plaintiff presents no declarations, pay stubs, testimony, or concrete evidence from any employee at the Erlanger or Canton DCs***.

Notably, after more than fourteen months of litigation, Plaintiff has secured only two opt-in consents, both filed the day before this Motion. (ECF No. 75.) While not dispositive, the near-total absence of opt-in interest undermines any inference that proposed collective members share a common experience or view themselves as "similarly situated" to Plaintiff.

## III. LEGAL ARGUMENT

### A. Legal Standard

The FLSA does not expressly provide for the distribution of judicially approved notice to putative plaintiffs. *See* 29 U.S.C. § 216(b). Collective actions should only be employed when "common issues of law and fact arising from the same alleged . . . activity" promote efficiency and judicial economy. *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). "[C]onditional certification at the first stage is by no means automatic." *Colson v. Avent, Inc.*, 2010 WL 339047, at *10 (D. Ariz. Jan. 27, 2010); *Fetrow-Fix v. Harrah's Entertainment, Inc.*, 2011 WL 6938594, at *5 (D. Nev. Dec. 30, 2011) ("The FLSA does not require certification of collective actions."). Automatic preliminary class certification is directly at odds with the Supreme Court's guidance to "ascertain the contours of the [216(b)] action at the outset." *Hoffman-La Roche Inc.*, 493 U.S. at 172.

To proceed collectively, Plaintiffs must show they are "similarly situated" to the employees to whom they seek to send notice. 29 U.S.C. § 216(b); *see also Doe v. Advanced Textile Corp.,* 214 F.3d 1058, 1064 (9th Cir. 2000). Party plaintiffs are similarly situated and may proceed in a collective "to the extent they share similar issues of law or fact material to the disposition of their FLSA claims." *Senne v. Kansas City Royals Baseball Corp.,* 934 F.3d 918, 947 (9th Cir. 2022) (*quoting Campbell v. City of Los Angeles,* 903 F.3d 1090, 1111 (9th Cir. 2018)). "What matters is not just any similarity between party plaintiffs, but a legal or factual similarity material to the resolution of the party plaintiff's claims." *Id.* at 1109.

### B. Plaintiffs and The Proposed Collective Action Members are Not Similarly Situated; Plaintiffs Are Not Even Similarly Situated Amongst Themselves

There is no evidence that Plaintiffs are similarly situated among themselves, let alone to a nationwide class of all non-exempt, hourly employees.

### 1. <u>Plaintiff's Evidence is Confined to Two Facilities and Does Not Support a Nationwide Collective</u>

Courts' analyses are "typically focused on a review of the pleadings but may sometimes be supplemented by declarations or limited other evidence." *Campbell*, 903 F.3d at 1109. Even under this lenient standard, "the affidavits of local employees who restate, without attribution, the concerns of distant employees and theorize that the problem is widespread will not suffice." *Torres v. CSK Auto, Inc.*, 2003 WL 24330020 (W.D. Tex. Dec. 17, 2003). "[S]ome factual evidence is necessary to justify an action on a national scale." *Bernard v. Household Int'l, Inc.,* 231 F.Supp.2d 433, 435 (E.D. Va. 2002).

Plaintiff's entire factual case rests on two declarations: Whitfield, who left the Henderson DC in March 2023, and South, who works at the Hebron DC. Plaintiff presents no declarations, pay stubs, testimony, or concrete evidence from employees at the Erlanger or Canton DCs. The proposed collective would encompass thousands of employees across multiple states, yet Plaintiff has offered evidence from only two workers at two of four facilities.

As detailed in Section II(C), Whitfield has not worked at Henderson in over three years and is "not in contact with the current workers there." (Whitfield Decl., ECF No. 80, ¶¶ 10, 31.) South offers nothing more than speculation regarding the Erlanger DC, admitting ***she has never been there***. (South Decl., ECF No. 79, ¶¶ 11, 35.) This conclusory belief, unsupported by personal knowledge, is insufficient to support conditional certification as to that facility. Neither declarant provides any facts or even speculation about the Canton DC.

Indeed, South's assumption is demonstrably wrong: as detailed in Section II(B), the Erlanger DC is not unionized, has entirely different job titles, pays employees on a different schedule, and has no bonuses for hourly associates. (Ex. A, Weaver Decl., ¶¶ 5, 11, 17, 22.) South's belief that the Erlanger DC must "run the same way as the Hebron DC" because of "the Union" is not merely speculative, it is affirmatively incorrect.

### C. <u>Substantial Allegations of a Common Decision, Policy, or Plan Do Not Exist</u>

It is the plaintiff's burden to present "at least some evidence" that collective members "were together the victims of a single decision, policy, or plan." *Litvinova v. City & Cnty. of San Francisco*,

2019 WL 1975438, at *2-4 (N.D. Cal. Jan. 3, 2019). Plaintiff has not made that showing. As set forth in Section II(B), the Henderson, Hebron, and Canton DCs each operated under separate Local CBAs with different union locals, while Erlanger has never had a CBA. (Ex. A, Weaver Decl., ¶¶ 3, 5; Ex. B, Moore Decl. ¶ 2.) The NAA expressly provided that key employment terms were to be "negotiated at the local level." (Ex. A, Weaver Decl., ¶ 6, **Exhibit A-1**, Article 5, ¶ 7.) ***No single agreement governs any two DCs simultaneously***.

### 1. No Common Policy Exists Regarding the Regular Rate of Pay

Plaintiff alleges that Levi failed to include non-discretionary bonuses, including the DC AIP bonus and attendance-related vacation hour bonuses, in calculating employees' regular rate of pay for overtime purposes. Under the FLSA, each employee's "regular rate" is determined by dividing total remuneration for a workweek by the total hours worked. 29 U.S.C. § 207(e). The "similarly situated" inquiry requires that plaintiffs share "similar issues of law or fact material to the disposition of their FLSA claims." *Senne*, 934 F.3d at 947. Resolving whether each employee's regular rate was properly computed requires examining the specific compensation components applicable to that employee at that employee's specific DC. The evidence demonstrates that those components differ materially at every level.

***DC AIP Bonus.*** As detailed in Section II(B) the DC AIP is not applied consistently across the DCs. (Ex. A, Weaver Decl., ¶ 21; Ex. B, Moore Decl. ¶ 5.) The NAA expressly provides that it is applied at a local level, leaving the calculation and payout different at each DC. (*Id.*) Part of the DC AIP is based on facility-specific cost-per-unit metrics tied to each individual DC's performance against its own budget. (Ex. A, Weaver Decl., ¶ 6, **Exhibit A-1,** Article 17; Ex. B, Moore Decl. ¶ 2, **Exhibit B-1,** Article 10.3.) The Hebron DC includes a third component, cost-per-unit metrics of the network, not used at the Henderson DC. (*Id.*) ***Most notably, the Erlanger DC hourly associates receive no bonuses at all.*** (Ex. A, Weaver Decl., ¶ 22.) Accordingly, there is no common policy governing the DC AIP across any two DCs, let alone all four.

***Pay Rates, Shift Differentials, and Supplemental Pay.*** As detailed in Section II(B), pay rates and shift differentials are negotiated locally and differ from one DC to the next. (Ex. A, Weaver Decl., ¶¶ 14, 23; Ex. B, Moore Decl. ¶ 11.) Each DC has unique compensation components, including

shift differentials, training pay, hostler duties pay, and show-up pay, none of which exist at the Erlanger DC or are calculated the same way at the Hebron DC. (Ex. A, Weaver Decl., ¶¶ 23-24; Ex. B, Moore Decl. ¶¶ 11-12.) Because these facility-specific pay components must be included in the regular rate calculation under 29 U.S.C. § 207(e), the regular rate analysis is necessarily individualized.

***Pay Processing and Overtime Schedules.*** The payroll systems and shift structures further demonstrate the absence of any common policy. As detailed in Section II(B), the Hebron DC processes payroll locally with manual review, while the Erlanger DC's payroll goes directly to corporate with no manual intervention. (Ex. A, Weaver Decl., ¶ 16.) Pay frequency, shift configurations, and resulting overtime calculations all vary from DC to DC. (Ex. A, Weaver Decl., ¶¶ 12, 17; Ex. B, Moore Decl. ¶¶ 10-12.)

These material differences in bonus eligibility, bonus calculation, supplemental pay components, pay frequency, payroll processing, and shift structures make it impossible to resolve the regular-rate claim on a collective basis. Determining whether each employee's regular rate was properly computed would require individualized inquiry into each employee's specific compensation structure at their specific DC, including the processing of pay at the DC, is precisely the type of inquiry that defeats collective treatment. There is no "single decision, policy, or plan" governing the regular rate of pay across Levi's DCs. *Litvinova*, 2019 WL 1975438, at *2-4.

#### 2. <u>**No Common Policy Exists Regarding Pre-Shift and Post-Shift Compensable Time**</u>

Plaintiff's second FLSA theory alleges that Levi failed to compensate employees for pre-shift and post-shift time, including time spent waiting in line at badge readers and time spent preparing workstations before shifts began. "What matters is not just any similarity between party plaintiffs, but a legal or factual similarity material to the resolution of the party plaintiff's claims." *Campbell*, 903 F.3d at 1109. The physical configurations, entry procedures, timekeeping systems, and operational workflows at each DC are materially different, negating any inference of a uniform "waiting time" experience.

***Building Entry and Security Configurations.*** As detailed in Section II(B), building entry procedures at each DC differ materially due to different building layouts. The Henderson DC has 13 security badge readers, the Hebron DC has at least 5 time clocks, the Erlanger DC requires employees push a buzzer to enter – a procedure that exists at no other DC. (Ex. A, Weaver Decl., ¶¶ 19-20, Ex. B, Moore Decl. ¶ 13.) These materially different entry and security configurations directly undermine any inference that a uniform "waiting time" experience could exist across all DCs.

***Equipment, Workflows, and Pre-Shift Preparation.*** As set forth in Section II(B), the physical equipment and operational workflows at each DC create fundamentally different pre-shift preparation requirements. The Hebron DC has unique rotating stack storage units. (Ex. A, Weaver Decl., ¶ 2.) Employees are restricted to specific departments and training is facility specific. (*Id.*, ¶ 28; Ex. B, Moore Decl. ¶ 6.) At the Erlanger DC, employees are general warehouse associates who can work anywhere in the facility. (*Id.*, ¶ 26.) These operational differences mean that even the types of "pre-shift preparation" that might exist would necessarily differ from one DC to the next.

Because the building configurations, badge reader and time clock systems, equipment, workflows, and job responsibilities differ at each DC, there is no basis to conclude that any alleged uncompensated "waiting time" or pre-shift preparation time is the product of a common policy or practice applicable across all facilities. There is no "single decision, policy, or plan" governing pre-shift or post-shift time across Levi's DCs. *Litvinova*, 2019 WL 1975438, at *2-4.

### 3. <u>Plaintiff's Remaining Arguments Do Not Establish a Common Policy</u>

Plaintiff's reliance on the NAA as evidence of a "common policy" is a red herring. The NAA itself refutes uniformity by expressly reserving key compensation and scheduling issues to the local level. The DC AIP is applied locally with different calculations at each DC, and Erlanger receives no bonuses at all. (Ex. A, Weaver Decl., ¶¶ 21-22; Ex. B, Moore Decl. ¶ 5.)

Plaintiff's reliance on an expired Local CBA (Mariner Decl., ECF No. 77, Ex. A-9) is similarly unavailing. That agreement expired in 2019, over seven years ago. Since then, the NAA itself expired, the Henderson DC negotiated a standalone CBA, and the Erlanger DC was never subject to any CBA. (Ex. A, Weaver Decl., ¶¶ 5-6.) A seven-year-old expired agreement that the employee's themselves voted out, does not establish current "similarly situated" status.

Plaintiff also cites a "Worldwide Code of Business Conduct" as evidence of "common national practices." (Motion, ECF No. 76, p. 10:15.) A code of business conduct addressing ethics and compliance is not a timekeeping or compensation policy.

Plaintiff's own FAC further undermines the claim of a "common policy." The FAC alleged that both the Erlanger and Hebron DCs had closed, an allegation Plaintiff now admits was "premature and ignorant." (Motion, ECF No. 76, p. 9:27-10:2; FAC, ECF No. 31, ¶¶ 19-20.) If Plaintiff could not even determine whether facilities were open or closed, the Court should be skeptical of unsupported assertions that these facilities share "common policies."

Finally, the NAA's expiration on May 31, 2025, further undermines Plaintiff's theory. Currently, no single agreement governs any two facilities simultaneously. (Ex. A, Weaver Decl., ¶¶ 6-8; Ex. B, Moore Decl., ¶ 2.) The "common policy" theory – even if relevant - is untenable for any period after May 31, 2025, the majority of the proposed collective period.

**D. <u>If Certified, the Collective Should Be Limited to the Henderson DC</u>**

To the extent the Court conditionally certifies the class, it should be limited to the Henderson DC, the only facility for which Plaintiff has presented concrete, firsthand evidence. *Davis, III v. Westgate Planet Hollywood Las Vegas, LLC*, 2009 WL 102735, *12-14 (D. Nev. 2009) (denying nationwide notice when proof is limited to specific employees at specific locations); *see also Hinojos v. Home Depot, Inc.*, 2006 WL 3712944, at *6 (D. Nev. Dec. 1, 2006) (refusing to "conclude that a nationwide policy exists based on limited assertions pertaining to a few stores"); *Fetrow–Fix,* 2011 WL 6938594, at *8; *Torres,* 2003 WL 24330020 ("the affidavits of local employees who restate, without attribution, the concerns of distant employees and theorize that the problem is widespread will not suffice.").

Plaintiff's personal experience is confined entirely to the Henderson DC. South's declaration provides, at best, a basis for including the Hebron DC alone – if you disregard the Hebron CBA. South's speculative testimony about Erlanger, unsupported by personal knowledge, is insufficient to extend the collective to that facility. Critically, Plaintiff's Motion contains not a single declaration, pay stub, or factual allegation specific to the Canton DC. *See Davis, III, supra*. Moreover, the Erlanger DC is not subject to a CBA and should be excluded. *See Adams v. Inter-Con Sec. Sys., Inc.*,

242 F.R.D. 530, 539 (N.D. Cal. 2007) (holding it was not proper to include employees who are and are not subject to a CBA in the same collective class).

Plaintiff contends that Levi's alleged failure to produce discovery justifies an adverse inference of a same policy. Plaintiff's reliance on *Adams,* 242 F.R.D. 530, is misplaced. *Adams* involved thirteen declarations and 383 opt-in plaintiffs (*id.* at 538), uniform company-wide policies (*id.* at 537), and an employer that categorically refused production. Here, Plaintiff has two declarations, zero opt-ins from Canton and Erlanger, materially different CBAs (or no CBA at all), and Levi reasonably deferred production pending resolution of which DCs belong in this case. Plaintiff never filed a motion to compel, the proper remedy for any perceived discovery deficiency.

### E. **<u>The Court Should Deny Plaintiff's Request for a Three-Year Notice Period Based on Alleged Willfulness</u>**

Plaintiff asks this Court to authorize a three-year notice period based on the assertion that Levi's alleged FLSA violations were "willful" under 29 U.S.C. § 255(a). A willfulness finding at this preliminary stage is premature and unsupported by the record. The regular two-year statute of limitations should apply.

Willfulness requires a showing "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Frohm v. City & Cnty. of San Francisco*, No. 22-CV-06002-JST, 2025 WL 1397203, at *7 (N.D. Cal. May 14, 2025) (*citing McLaughlin v. Richland Shoe Co*., 486 U.S. 128, 133 (1988).) Courts do "not presume that conduct was willful in the absence of evidence." *Alvarez v. IBP, Inc*., 339 F.3d 894, 909 (9th Cir. 2003).

Plaintiff's "evidence" of willfulness consists of nothing more than the assertion that Levi has been aware of the FLSA's requirements for decades, a standard that, if accepted, would render virtually every FLSA violation "willful" by definition. This is a merits determination that should be resolved at a later stage, not on a motion for notice.

### F. **<u>The Court Should Deny Equitable Tolling Because Rare and Exceptional Circumstances Do Not Exist; Any Delay Is From Plaintiff's Conduct</u>**

Equitable tolling applies only in rare situations when "extraordinary circumstances beyond the plaintiff's control made it impossible to file a claim on time." *Stoll v. Runyon,* 165 F.3d 1238,

1242 (9th Cir. 1999). Unlike Rule 23 class actions, FLSA opt-in claims commence only when the claimant files a written consent, 29 U.S.C. § 256(b), and Congress "chose not to provide for tolling." *Shaia v. Harvest Mgmt. Sub LLC*, 2015 WL 1744341, at *3 (N.D. Cal. Apr. 15, 2015).

Plaintiff has not identified any extraordinary circumstances justifying tolling. To the contrary, Plaintiff is the primary cause of delay: the Nevada court ordered Plaintiff to file his FLSA motion by October 8, 2025 (Order, ECF No. 17), but Plaintiff sought extensions, amended his complaint, moved to transfer, and did not file until May 12, 2026, only after this Court ordered him to do so. (Scheduling Order, ECF No. 71.)

Good faith motion practice by a defendant does not constitute wrongful conduct warranting equitable tolling. *Adedapoidle-Tyehimba v. Crunch, LLC*, 2013 WL 4082137, at *7 (N.D. Cal. Aug. 9, 2013).

### G. <u>To the Extent the Court Grants Any Type of Collective Action, Plaintiff's Proposed Notice Requires Modification</u>

If the Court grants any form of conditional certification, Plaintiff's proposed notice should be modified in several respects and Levi requests to meet and confer with Plaintiff regarding same:

#### 1. <u>Plaintiff's Notice Inaccurately Describes the Class</u>

Plaintiff's Notice incorrectly identifies the relevant starting point as March 3, 2022, three years before the Complaint was filed. (Proposed Notice, ECF No. 78, p. 1:23-25.) The FLSA statute of limitations is two years *unless* the violation is willful. 29 U.S.C. § 255(a). Plaintiff has made no showing of willfulness, so the starting point should be March 3, 2023. *Bonilla*, 61 F. Supp. 2d at 1136-39. Further, the definitions are vague regarding "pre-shift" and should be modified to reflect Plaintiff's specific allegations. (FAC, ECF No. 31, ¶¶ 27, 29.) Any mention of NRS overtime should be removed as this claim was dismissed. (Proposed Notice, ECF No. 78, p. 2:17-20.)

#### 2. <u>The Notice Incorrectly Suggests the Need to Be Represented By Plaintiff's Counsel</u>

Plaintiff's Notice incorrectly suggests putative Plaintiffs must be represented by Plaintiff's counsel. The "Legal Effect of Joining the Lawsuit" section states that joining means putative Plaintiffs "will be represented by the law firm identified in Section VIII below," and the "Your Legal

Representation if You Join" section lists only Plaintiff's counsel. (Proposed Notice, ECF No. 78, Sections VI, VIII.) The Notice should expressly provide that any putative Plaintiff is free to select his or her own counsel, or to proceed ***pro se***.[1] *See Reno v. Western Cab Company*, 2019 WL 8062561, *4 (D. Nev. Jan. 17, 2019).

**3. The Notice Fails to Inform Putative Plaintiffs About Fees and Costs**

Plaintiff's proposed Notice fails to inform putative Plaintiffs of the percentage of fees they agree to pay counsel, how fees are calculated, and that the issue will be ultimately decided by the court. *Lescinsky v. Clark County School District,* 539 F. Supp.3d 1121, 1130 (D. Nev. 2021). The Notice should also inform putative Plaintiffs that they share in liability for costs if Levi prevails. *Adams*, 242 F.R.D. at 540.

**4. The Notice Does Not Adequately Describe Putative Plaintiffs' Role in the Lawsuit**

Putative Plaintiffs must understand that joining makes them "party plaintiff[s]" subject to the risks and burdens of FLSA litigation, including potential deposition or trial testimony in this District (where none of them reside) and participation in written discovery. 29 U.S.C. § 216(b); *Daniels*, 2013 WL 1758891, *5; *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1527 n.1 (2013).

**5. Notice Improperly Encourages Joining the Lawsuit**

The proposed Notice improperly encourages joining the lawsuit, violating the prohibition against apparent judicial endorsement. *Schemkes v. Presidential Limousine*, 2011 WL 868182, at *4 (D. Nev. Mar. 10, 2011). The Introduction's statement that this is a "Court authorized notice" in bold capitals further suggests judicial endorsement. *See Cardoza v. Bloomin Brands, Inc.,* 2014 WL 5454178, *6 (D. Nev. Oct. 24, 2014). The front page should state that the court has not ruled on the merits. *Adams*, 242 F.R.D. at 540.

The Notice also crosses the line from information to solicitation. The "Further Information" section should be stricken. *See Hipp v. Liberty Nat'l Life Ins. Co.*, 164 F.R.D. 574, 576 (M.D. Fla. 1996). Additionally, the proposed order's requirements, mailing notices, emailing notices, posting

[1] While this is referenced in Section V "How to Join the Lawsuit," it should be reiterated when representation is mentioned so the putative Plaintiffs understand their options.

physical copies, and sending follow-up text messages after 45 days (Proposed Order, ECF No. 78-1, ¶¶ 5-7, 11), are excessive and amount to solicitation.

The proposed order also requires Levi to produce full names, home addresses, phone numbers, and email addresses of all putative collective members within 10 days. (Proposed Order, ECF No. 78-1, ¶ 4.) This timeline is unreasonable. Levi requests additional time and appropriate confidentiality protections.

### 6. <u>Levi's Position Should Be More Adequately Represented</u>

Plaintiff's proposed Notice includes a lengthy section detailing Plaintiffs' allegations while the only reference to Levi's position is that Levi "denies any wrongdoing." (Proposed Notice, ECF No. 78, p. 2:25-26.) This description ignores Levi's affirmative defense that it properly compensated all employees. Levi should be allowed to respond to Plaintiff's detailed allegations to ensure greater parity. *See Delara v. Diamond Resorts Int'l Marketing, Inc.,* 2020 WL 2085957, at *3 (D. Nev. Apr. 30, 2020); *Hoffman*, 2008 WL 5054684 at *15.

## IV. <u>CONCLUSION</u>

For each of the foregoing reasons, the Court should deny Plaintiff's Motion in its entirety.

DATED: June 2, 2026

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: */s/ Noel M. Hernandez*
ANTHONY L. MARTIN (*Pro Hac Vice*)
NOEL M. HERNANDEZ
JENNY J. LIAO

Attorneys for Defendant
LEVI STRAUSS & CO.

**PROOF OF SERVICE**
*Jermaine Whitfield v. Levi Strauss & Co., et al.*
USDC-Northern District Case No. 3:26-cv-01300-RFL

I am and was at all times herein mentioned over the age of 18 years and not a party to the action in which this service is made. At all times herein mentioned I have been employed in the County of Clark in the office of a member of the bar of this court at whose direction the service was made. My business address is 10801 W. Charleston Blvd., Suite 500, Las Vegas, NV 89135.

On June 2, 2026, I served the following document(s):

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR NOTICE TO FLSA COLLECTIVE PURSUANT TO 29 U.S.C. § 216(B)**

by placing ☐ (the original) ☒ (a true copy thereof) in a sealed envelope addressed as stated on the attached service list.

☒ **BY MAIL:** I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the practice of Ogletree, Deakins, Nash, Smoak & Stewart, P.C.'s practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

☐ **(Federal)** I declare that I am employed in the office of a member of the State Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on June 2, 2026, at Las Vegas, NV.

*/s/ Vincent M. Risucci*
Signature

**SERVICE LIST**

Rachel Mariner
Jason Kuller
RAFII & ASSOCIATES, P.C.
1120 North Town Center Dr., Suite 130
Las Vegas, NV 89144

Attorneys for Plaintiff

Robert Montes, CA Bar No. 159137
RAFII & ASSOCIATES, P.C.
9100 Wilshire Blvd, Ste 465e
Beverly Hills, CA 90212