UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERMAINE WHITFIELD,<br>Plaintiff,<br>v.<br>LEVI STRAUSS & CO,<br>Defendant. | Case No. 26-cv-01300-RFL<br>**ORDER GRANTING MOTION FOR NOTICE TO FLSA COLLECTIVE**<br>Re: Dkt. No. 76 |

Jermaine Whitfield alleges that his former employer, Levi Strauss & Co ("Levi's"), underpaid him and his coworkers. He asserts claims under the Fair Labor Standards Act ("FLSA") and Nevada law. The FLSA allows for similarly situated plaintiffs to join a case and thereby form a collective action. This is a two-step process. First, a plaintiff seeks conditional certification of the collective, so notice is sent to its potential members. Later, the defendant can seek decertification. Whitfield moves for the first step, notice to potential collective members. For the reasons stated below, Whitfield's motion is **GRANTED**. This order assumes the reader is familiar with the facts of the case, the applicable legal standards, and the parties' arguments.

***Similarly Situated.*** At the preliminary certification stage, the collective's similarly situatedness is evaluated under something "loosely akin to a plausibility standard." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1109 (9th Cir. 2018). Members of a collective are similarly situated if they "share a similar issue of law or fact material to the disposition of their FLSA claims." *Id.* at 1117. It is improper to resolve factual disputes at this stage, so evidence submitted by a defendant will generally not preclude certification. *Mobley v. Workday, Inc.*, No. 23-CV-00770-RFL, 2025 WL 1424347, at *3 n.2 (N.D. Cal. May 16, 2025) (citations omitted).

Unpaid Time. Levi's appears to have four distribution centers: Henderson, NV; Hebron, KY; Erlanger, KY; and Canton, MS. Whitfield submits three declarations: two from former employees in Henderson and one from a current Hebron employee. (Dkt. No. 79 ("South Decl."); Dkt. No. 80 ("Whitfield Decl."); Dkt. No. 95-1 ("Hernandez Decl.").) Each describes unpaid time waiting in line to clock in and out. (South Decl. ¶¶ 18, 22, 26, 29; Whitfield Decl. ¶¶ 15–18; Hernandez Decl. ¶¶ 12–15.) Whitfield also submitted a 2024 Indeed review from an individual purportedly in Florence, KY that recounted an "eerie" experience "seeing the entire shift have to wait in line and clock out for either the shift hours and/or lunch/break time."[1] (Dkt. No. 77-8.) In addition to waiting time, the three declarants also describe unpaid pre-shift time to prepare supplies or gear. (South Decl. ¶¶ 14, 17, 24–25; Whitfield Decl. ¶¶ 19–23; Hernandez Decl. ¶¶ 11, 16, 21–28.) Similarly, two of them describe post-shift time paid at the discretion of their supervisors. (South Decl. ¶¶ 27–28; Whitfield Decl. ¶ 25.) Finally, Whitfield submits some evidence of corporate Levi's labor policies, including a nationwide collective bargaining agreement (supplemented with local agreements) for 2022 to 2025, a corporate human resources division, and a Worldwide Code of Business Conduct. (Dkt. No. 4-2; Dkt. No. 77-3.)

This evidence is sufficient to show plausibility that workers in the Henderson and Hebron distribution centers are similarly situated. It is plausible that the two distribution centers have an unwritten policy of requiring workers to work hours that they are not paid for. Whitfield only needed to submit a "handful of declarations" to make that showing. *See Harris v. Vector Mktg. Corp.*, 716 F. Supp. 2d 835, 838 (N.D. Cal. 2010). And even assuming the two distribution centers have different configurations, workflows, and collective bargaining agreements, "[a] systemic policy is no less common across the collective if those subject to it are affected at different times, at different places, in different ways, or to different degrees." *See Campbell*, 903 F.3d at 1116.

It is a closer call whether Whitfield has met his burden as to the remaining two

[1] At this stage, evidentiary rules are looser. *Heath v. Google Inc.*, 215 F. Supp. 3d 844, 853 (N.D. Cal. 2016). Accordingly, the review can be considered despite it being hearsay. *See id.*

distribution centers, Erlanger and Canton, for which he presents no declarations with firsthand knowledge. And Levi's presented evidence that the Erlanger distribution center is not unionized. (Dkt. No. 89 ¶ 9; *but see* South Decl. ¶ 35 (describing South's belief that Erlanger "has to run the same way as Hebron DC" "because of the Union.").) Nevertheless, it is plausible that an unwritten policy at two of the four distribution centers would apply across the remaining two distribution centers, particularly since Levi's has a centralized human resources operation and appears to have some nationwide labor policies. Since that unwritten policy plausibly affects all workers, non-union workers at the Erlanger distribution center would still be similarly situated to union workers at other distribution centers. *See Campbell*, 903 F.3d at 1116.

Overtime Rate of Pay. As to the overtime claim, Whitfield's three declarants describe several forms of bonus pay that they believe are not accounted for in their overtime rate of pay. (South Decl. ¶¶ 31–33; Whitfield Decl. ¶¶ 27–30, 36; Dkt. No. 77-4 at 2–3; Hernandez Decl. ¶¶ 29–31; Hernandez Decl. at 5–7.)[2] For the same reasons discussed with the unpaid time claim, this is sufficient to plausibly show an unwritten policy at the Henderson and Hebron distribution centers that bonuses were not considered when calculating the regular rate of pay for overtime. Though the calculation of bonuses and components of the regular rate of pay may differ across distribution centers, those differences do not make workers at those two distribution centers differently situated with respect to whether their bonuses were considered in calculating overtime. *See Campbell*, 903 F.3d at 1116. And while also a close call, for the same reasons discussed with the unpaid time claim, Whitfield's evidence makes it plausible that the unwritten policy exists across the other locations. Although Levi's asserts that the Erlanger distribution center provides no bonuses, Whitfield may well discover otherwise through discovery. *See Fernandez v. Tox Corp.*, 677 F. Supp. 3d 1089, 1099 (C.D. Cal. 2023).

***Notice Period.*** The notice period is commensurate with the statute of limitations: a default of two years, but three years for plausibly willful violations. *Saleh v. Valbin Corp.*, 297

[2] All citations to page numbers in filings on the docket refer to ECF pagination.

F. Supp. 3d 1025, 1035 (N.D. Cal. 2017). Under the FLSA, willfulness means that "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Whitfield provides a demand letter sent to Levi's in March 2025 asserting it systemically underpaid workers, yet that conduct allegedly persists. (*See* Dkt. No. 77-2; South Decl. ¶¶ 5, 14, 28, 32.) It is therefore plausible that Levi's "was on notice of its FLSA requirements, yet took no affirmative action to assure compliance." *See Alvarez v. IBP, Inc.*, 339 F.3d 894, 909 (9th Cir. 2003); *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 903 (9th Cir. 2013) (noting "a plaintiff need not allege willfulness with specificity"). While the demand letter only specifically asserted violations of Nevada law, it is plausible to infer that Levi's would understand the basic point that a violation of Nevada law as to this issue would also violate the FLSA. *Cf. Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1300 (10th Cir. 2018) (finding plausible knowledge of FLSA requirements and citing *Rivera*, 735 F.3d at 902–03)). The notice period is therefore three years.

***Equitable Tolling.*** Claims of an FLSA collective can be equitably tolled. *Coppernoll v. Hamcor, Inc.*, No. 16-CV-05936-WHA, 2017 WL 1508853, at *2 (N.D. Cal. Apr. 27, 2017). However, tolling is typically "extended sparingly." *Woods v. Vector Mktg. Corp.*, No. 14-CV-0264-EMC, 2015 WL 1198593, at *6 (N.D. Cal. Mar. 16, 2015) (citation omitted). As a result, it is inappropriate to toll the statute of limitations simply based on "good faith motion practice by a defendant." *Id.* at *7 (citation omitted). On the other hand, court congestion and a defendant's requests to postpone consideration of a motion for provisional certification can warrant equitable tolling. *Greist v. LendUS, LLC*, No. 24-CV-02411-AMO, 2025 WL 1616541, at *6 (N.D. Cal. June 6, 2025).

Collective members' claims will be tolled from July 2, 2026, through the later of the date on which Levi's provides Whitfield with members' contact information or the date on which Whitfield's notice is approved. It is appropriate to start tolling 30 days after the motion for provisional certification became ripe for resolution. *See Dualan v. Jacob Transportation Servs.,*

*LLC*, 172 F. Supp. 3d 1138, 1154 (D. Nev. 2016). But for Levi's' request to extend its deadline to file an opposition, the motion would have become ripe on June 2, 2026. (Dkt. No. 76.) Though Levi's' request was perfectly understandable, it delayed notice to potential collective members through no fault of their own. Collective members' claims will therefore be tolled starting from July 2, 2026. Delays prior to that point do not warrant tolling because they are attributable to Levi's' good-faith motion practice. As for the end of tolling, it is appropriate to toll until "lingering case management concerns" surrounding the notice are resolved. *See Greist*, 2025 WL 1616541, at *8; *Dualan*, 172 F. Supp. 3d at 1154. Tolling will not extend through the opt-in deadline, as that period is a standard part of FLSA actions. *Cf. Woods*, 2015 WL 1198593, at *7 (noting Congress was aware "time would lapse" between filing a complaint and opt-in plaintiffs joining yet did not expressly toll claims during that time) (citation omitted).

***Notice Disputes.*** Levi's contends that Whitfield's proposed notice should be modified in several respects. The following briefly opines on those proposed modifications.

<u>Description of the Collective.</u> As previously discussed, the collective is properly described as starting three years before this action was filed. There should be a brief description of Whitfield's pre-shift allegations. References to the dismissed Nevada overtime claim should be removed.

<u>Representation.</u> Consistent with the "How to Join the Lawsuit" section, the "Legal Effect of Joining The Lawsuit" and "Your Legal Representation if You Join" sections should indicate that opt-in plaintiffs will be represented by Whitfield's counsel unless they choose otherwise. Proceeding *pro se* does not need to be separately described, as that is confusing and duplicative.

<u>Fees and Costs.</u> The FLSA mandates an award of reasonable attorney's fees and costs if judgment is awarded to a plaintiff. 29 U.S.C. § 216(b). This provision applies even when an action is settled. *Dunn v. Tchrs. Ins. & Annuity Ass'n of Am.*, No. 13-CV-05456-HSG, 2016 WL 153266, at *4 (N.D. Cal. Jan. 13, 2016). As a result, the notice does not need to be more specific about fees unless Whitfield's counsel will seek additional fees from individual opt-in plaintiffs. Similarly, the notice need not indicate the speculative possibility that opt-in plaintiffs could be

liable for Levi's' costs. *See Knight v. Concentrix Corp.*, No. 18-CV-07101-KAW, 2019 WL 3503052, at *7 (N.D. Cal. Aug. 1, 2019).

Opt-In Plaintiffs' Role. The notice should inform opt-in plaintiffs that they will have to participate in this case as a party, including through participating in discovery. *See Zeman v. Twitter, Inc.*, 747 F. Supp. 3d 1275, 1288 (N.D. Cal. 2024). It need not say that travel to this District will be required, particularly since it is not clear that will be required.

Endorsement. The proposed notice is not an improper judicial endorsement. *See id.* It is appropriate to include contact information for Whitfield's counsel. *See id.* at 1289. Additionally, Whitfield's notice plan properly uses multiple contact methods and reminders to reach all potential opt-in plaintiffs. *See id.* at 1287–88. However, Whitfield does not adequately explain why it is necessary for Levi's to physically post the notice in distribution centers, so that will not be required. *See Litvinova v. City & Cnty. of San Francisco*, No. 18-CV-01494-RS, 2019 WL 1975438, at *5 (N.D. Cal. Jan. 3, 2019).

Levi's' Position. The proposed notice adequately represents Levi's' denial. *See, e.g.*, *Knight*, 2019 WL 3503052, at *8; *Zeman*, 747 F. Supp. 3d at 1288.

Contact Information. A ten-day deadline for Levi's to produce contact information is too fast. Thirty days from the date of this Order seems adequate. As previously discussed, that time will be tolled when considering the statute of limitations.

***Conclusion.*** Whitfield's motion is **GRANTED**. The following collective is conditionally certified:

> All current and former hourly employees of Levi Strauss & Co. who work or worked at Levi Strauss Distribution Centers in the United States at any time during the period from March 3, 2022 until the judgment in this action.

Whitfield shall revise his proposed notice and order consistent with this Order, and shall share those proposals with Levi's by **August 10, 2026**. By **August 17, 2026**, the parties shall jointly submit those materials, a redline of changes from the current proposals, and any objections from Levi's that the proposals are inconsistent with this Order. Levi's shall not raise

new objections. Any objections will be ruled on without further submissions. The parties are encouraged to look at this Court's orders in *Mobley v. Workday* for guidance on any notice disputes. *See, e.g.*, *Mobley v. Workday, Inc.*, No. 23-CV-00770-RFL, 2025 WL 3215337, at *1 (N.D. Cal. Nov. 18, 2025).

**IT IS SO ORDERED.**

Dated: August 3, 2026

RITA F. LIN
United States District Judge