SEYFARTH SHAW LLP
Michael Afar (SBN 298990)
mafar@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone: (310) 277-7200
Facsimile: (310) 201-5219

SEYFARTH SHAW LLP
Ryan McCoy (SBN 276026)
rmccoy@seyfarth.com
Petersen D. Walrod (SBN 339521)
pwalrod@seyfarth.com
560 Mission Street, Suite 3100
San Francisco, California 94105
Telephone: (415) 397-2823
Facsimile: (415) 397-8549

Attorneys for Defendant
LEVI STRAUSS & CO.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JERMAINE WHITFIELD, et al.,

Plaintiff,

v.

LEVI STRAUSS & CO.,

Defendant.

Case No. 3:26-CV-01300-RFL

**DEFENDANT LEVI STRAUSS & CO.'S OPPOSITION TO PLAINTIFFS' MOTION TO CLARIFY ORDER (ECF NO. 130)**

Date: December 1, 2026
Time: 10:00 a.m. PST
Courtroom: 4, 17th Floor
Judge: Hon. Rita F. Lin

## I. INTRODUCTION

Plaintiffs Jermaine Whitfield, et al. ("Plaintiffs") present their Motion to "Clarify" (the "Motion") as if the relevant question were whether, in a vacuum, a court may permit some form of electronic opting in to an FLSA collective. However, that is **not** the determinative question here.

As a threshold matter, Plaintiffs are not merely "clarifying" the Court's Order of September 2, 2026 (ECF No. 114.) Plaintiffs are attempting to amend an order, and that is borne out by clear and unambiguous language in both the notice and order. Indeed, the existence of other cases stretching back to 2008 permitting electronic opting-in demonstrates that Parties and courts know how permit it by express language. The Court did not in ECF No. 114. And, Plaintiffs did not when they originally proposed the notice they now seek to change. This Motion is an attempt by Plaintiffs to modify an order that has been litigated and negotiated over months and rounds of litigation. Plaintiffs have not demonstrated good cause to amend the current order. Plaintiffs have not and cannot demonstrate that the mail-based opt-in process is not working. By all appearances it is working as designed; 87 consents have been filed and, according to the third party administration, over 280 valid opt-ins have been submitted, approximately 7% of the potential collective.

Plaintiffs do not propose basic details that would be necessary for Defendant Levi Strauss & Co. ("Levi") or this Court to make a fair determination. Plaintiffs do not include a proposed amendment to the order or to the notice, such as *who* the consents would be emailed to. Nor do Plaintiffs include a proposed printout of the "interactive website" that they ask this Court to permit while the notice process is still open. And, critically, Plaintiffs provide no explanation for what the electronic opt-in form or email must contain, such as to guarantee that the electronic message is authentic and genuine (and, equally as important, no explanation for how these requirements will be communicated to thousands of potential collective members). Plaintiffs do not explain how they will communicate these material changes to their own notice to collective members who already received a notice that says that they can only opt-in by mail. There has already been a meeting of the minds between the parties about the notice that this Court already approved, and there is no cause to change the notice process and further delay

this process. Granting Plaintiffs' Motion will entail more court supervision, more motion practice, more litigation about procedure, and ultimately more delay.

Thus, the relevant question here is not whether, as an general matter of law, a court may permit electronic opting-in at the inception of the opt-in process. Rather, the question is whether, in this case, good cause exists to change the opt-in process midstream. Based on the lack of any demonstrated need to fix the process, the answer is no, and to permit a new opt-in channel, or worse, to permit a supplemental notice and/or an extension to the opt-in period would raise the specter of "the appearance of judicial endorsement of the merits of the action." *Hoffmann-La Roche Inc. v. Sperling* (*Sperling*), 493 U.S. 165, 174 (1989).

## II. RELEVANT BACKGROUND

On May 12, 2026, Plaintiffs filed a Motion for Notice to the Collective pursuant to 29 U.S.C. § 216(b). ECF 76. One of the documents filed with the Motion was Plaintiffs' [PROPOSED] Notice. ECF 78. The [PROPOSED] Notice provided as follows:

> V. **HOW TO JOIN THE LAWSUIT**
>
> If you wish to join the Lawsuit, you should complete the enclosed Consent to Join form and mail it to the address on the form. You may also choose to participate in this Lawsuit by hiring separate counsel and having them file notice with the Court by [INSERT DATE 90 DAYS AFTER NOTICE], or by filing a pro se notice with the Court by this deadline.
>
> If you mail a Consent to Join form, you should do so as soon as possible, but no later than [INSERT DATE 90 DAYS AFTER NOTICE] to ensure that it is timely filed with the Court. **If you do not complete and mail a Consent to Join form on or before the [INSERT DATE 90 DAYS AFTER NOTICE] deadline, you may not be allowed to participate as a party to the Lawsuit.**

ECF 78, 3:10-19. Nowhere in ECF 78, 76, or elsewhere, did Plaintiffs raise the possibility of opting in electronically. The Parties did not bargain for or negotiate an agreement to allow for electronic opt-in. In fact, Plaintiffs' proposed order granting the Motion for Notice to the Collective states "Any putative Collective Member who wishes to opt into this Action must properly complete a consent to join form and return it to the Administrator no later than the Participation Deadline. Any consent to join that is mailed ***must be postmarked*** on or before the Participation Deadline." ECF 78-1, ¶ 8 (emphasis added).

Because the Motion for Notice to the Collective did not raise the issue of the precise means of opting in, this topic was not at issue in the Parties' briefing and was not addressed by Plaintiffs or Levi. See ECF 88 (Levi's Opposition); ECF 95 (Plaintiffs' Reply).

On August 3, 2026, the Court granted ECF 77. ECF 101. The Court ordered Plaintiffs and Levi to prepare a revised notice and order consistent with the order, which the Parties did and submitted to the Court on August 17, 2026. ECF 102. Plaintiffs and Levi filed separate versions of the notice with redline suggested changes. See ECF 102-1, 102-2. The Parties jointly submitted a version of the order with Plaintiffs' red line changes reflected. ECF 102-3. On August 24, 2026, the Court issued a tentative ruling. ECF 105. The Court permitted the Parties to file a joint statement with any further "objections or requested adjustments" by August 31. *Id*. The Parties did so on August 31. ECF 111. Plaintiffs requested several changes that were not opposed by Levi; none of which involved the means by which the notice could be returned. *Id*. On September 2, 2026, the Court granted Plaintiffs' requested changes, issuing an Amended Order granting the Motion for FLSA Collective Notice. ECF 114. Plaintiffs' silence as to potentially returning the notice by email while the Parties met and conferred over is deafening.

On October 19, 2026, the third party administrator, CPT Group, mailed the FLSA notice to the potential collective members. CPT Group has indicated that they have successfully mailed the FLSA notice to 3,971 individuals. They have indicated that over 280 individuals have opted in. Of these, only 276 were returned, and 269 of these were successfully traced. As of November 23, 2026, the third party administrator reports only 125 "undelivered" notices. Declaration of Petersen D. Walrod in Support of Opposition ("Walrod Decl."), ¶ 2.

The now-final ECF 114-1 contemplated opting-in ***only*** **by mail** and did not provide for opting in by other means, with substantially the same Section V as initially proposed by Plaintiffs.

## III. LEGAL STANDARD

"The purpose of notice is to make putative class members aware of the lawsuit and their right to participate—not to encourage them to participate." *Charbonneau v. Mortg. Lenders of Am. L.L.C.*, No. 18-2062-CM-KGS, 2018 WL 6423584, at *4 (D. Kan. Dec. 6, 2018). "[I]ntervention in the notice process for case management purposes is distinguishable in form and function from the solicitation of

claims. In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality. To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Sperling*, 493 U.S. at 174; *Fenley v. Wood Grp. Mustang, Inc.*, 170 F. Supp. 3d 1063, 1074 (S.D. Ohio 2016) ("In facilitating notice, the Court must avoid communicating to absent class members any encouragement to join the suit or any approval of the suit on its merits.")

While the Court's intervention into the opt-in process remains a discretionary matter, even while that opt-in process has already commenced, courts typically require a showing of something akin to good cause for requests to add more or different notice. See e.g., *Stacy v. Jennmar Corp. of Virginia*, Inc., No. 1:21CV00015, 2022 WL 1442246, at *2 (W.D. Va. May 6, 2022) ("Here, I agree with the plaintiffs that the below average opt-in rate warrants a reminder. However, I am not persuaded that the plaintiffs' other proposed methods of notice are necessary. They have not alleged, or put forth any evidence, suggesting that notices were returned undeliverable. As of November 23, 2026, of 3,971 notices, only 276 were returned, and 269 of these were successfully traced. Walrod Decl., ¶ 2.  I have no reason to suspect that the addresses provided by the defendants were therefore inaccurate or outdated.")

## IV. DISCUSSION

### a. This Motion Seeks a Material Change to the Order, Not a Mere "Clarif[ication]"

Here, Plaintiffs are not seeking to "clarify" ECF No. 114 and the notice; they are seeking to materially change these documents and, in turn, an ongoing notice process that the Court already authorized. "There is no 'one-size-fits-all' approach to notifying putative class members in lawsuits such as this." *Fenley*, 170 F. Supp. 3d at 1074. For example, many courts have declined to permit text message notices, for a variety of reasons. See e.g., *Kiley v. MedFirst Consulting Healthcare Staffing, LLC*, 297 F. Supp. 3d 1260, 1268 (N.D. Ala. 2018) ("the court is concerned that a text message notice could be incomplete and might not convey the seriousness of the communication. Notably, Plaintiffs have not submitted a proposed text message notice for the court's review."); *Bertram v. Stillwater Mining Co.*, 832 F. Supp. 3d 1152, 1162 (D. Mont. 2026) ("The Court agrees that text messaging is an invasive form of notice distribution that should not be used unless there is good reason. Hanigan has not

provided a reason as to why text message is needed beyond the argument that other courts have allowed text messaging."); *Villarreal v. Caremark LLC*, 66 F. Supp. 3d 1184, 1195 (D. Ariz. 2014), abrogated on other grounds by *Campbell v. City of Los Angeles*, 903 F.3d 1090 (9th Cir. 2018) ("Further, even in modern times, it is more common to not allow text message distribution when parties have not agreed to the use of text message.") (internal citation omitted). Other courts stage types of notice in phases, depending on when a preferred type of notice fails. See e.g., *Williams v. Charlotte-Mecklenburg Hosp. Auth.*, No. 320CV00242RJCDSC, 2022 WL 1019241, at *3 (W.D.N.C. Apr. 5, 2022) ("the Court will allow disclosure of telephone numbers to facilitate notice by text message, but only for those potential plaintiffs whose initial notice by mail and email are returned as undeliverable."); *Boggs v. United States*, 139 Fed. Cl. 375, 379 (2018) ("If delivery by mail is not successful, a further attempt to provide notice will be made by electronic means, using e-mail addresses provided by the government.[] If delivery of the notice still cannot be achieved, the parties have agreed to confer regarding additional possible means of locating potential plaintiffs.")

Courts can choose to permit electronic opting in or notice, to deny then, to permit them in stages (i.e., as in *Boggs*, to permit electronic notice only after mail notice has failed), or any permutation.

Conversely, by providing for certain types of notices or opting-in channels, it is inferred that the other methods that are not stated are excluded by the maxim of *expressio unius est exclusio alterius*. *Silvers v. Sony Pictures Ent., Inc.*, 402 F.3d 881, 885 (9th Cir. 2005) ("The doctrine of expressio unius est exclusio alterius 'as applied to statutory interpretation creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions.' ") (citing *Boudette v. Barnette*, 923 F.2d 754, 756–57 (9th Cir.1991).)

In this case, this Court had the discretion to authorize only mail notice, mail notice and electronic notice, mail notice and then electronic notice, or any number of permutations (and, similarly, mail opting-in, etc.) The fact that some courts permit electronic opting in in some situations does not transform the Court's silence on this issue into acquiesce when Plaintiffs discovered that electronic notice was not previously discussed by the Parties, let alone contemplated by this Court's order. Neither ECF No. nor and the notice contain any provision whatsoever that expressly permits electronic notice.

The Motion itself cites cases, some issued nearly 20 years ago, where courts have had litigants who have argued over the propriety of electronic forms of opting in. These cases show that when courts want to permit electronic notice or opting-in, they do so – in express language, and before the notice itself goes out.[1]

Similarly, the Motion cites ECF No. 114's directions for email notice and text notice. But these show that if the Court had intended for these emails and text messages to also include some method of electronically opting in, it could have done so. But it did not.

Rather, Plaintiffs' notice, that Plaintiffs prepared, and that the administrator has already sent to nearly 4,000 potential collective members, affirmatively provides for *only* mailing in of opt-ins. It states that "If you wish to join the Lawsuit, you should complete the enclosed Consent to Join form and ***mail it*** to the address on the form." (Emphasis added.) It further provides that "If you ***mail*** a Consent to Join form, you should do so as soon as possible, but no later than [INSERT DATE 90 DAYS AFTER NOTICE] to ensure that it is timely filed with the Court. If you do not complete and ***mail*** a Consent to Join form on or before the [INSERT DATE 90 DAYS AFTER NOTICE] deadline, you may not be allowed to participate as a party to the Lawsuit." (Emphasis added.) To any reasonable reader, returning the form by email is not an option.

The bare fact that in some situations courts have permitted electronic opting-in does not change the fact that, in this case, the Court did not expressly permit any manner of opting-in other than by mail. Therefore, the relief sought by the Motion is not merely clarification. It is a material amendment to the hotly litigated opt-in process, and it poses a fundamentally question than whether, in the abstract, a court can permit potential collective members to opt-in electronically.

**b. The Motion Fails to Show Good Cause to Amend ECF No. 114**

[1] Plaintiffs' construction of ¶ 7 also creates the absurd consequence that *any* form of communication directed at the administrator could suffice. Would a comment on CPT Group's Youtube page (https://www.youtube.com/channel/UCsN-HEP9YfeYTzv5L9n1fyw) suffice? See *Kiley*, 297 F. Supp. 3d at 1268.

At bottom, Plaintiffs seek relief from circumstances of their own making, because *Plaintiff's* proposed the notice and the order that they now seek to amend. And Plaintiffs have had many opportunities to fix the issue of their own creation:

- Plaintiffs proposed the original notice with no reference to electronic opt-in, and clearly contemplating only opting-in via mail (ECF 78);
- Plaintiffs prepared the original Motion for Notice to the Collective (ECF 77) which did not raise the issue of opting-in electronically;
- Plaintiffs submitted a reply brief that also declined to take up the issue (ECF 95);
- After the Court issued its original order granting the Motion (ECF 101), Plaintiffs could have, but did not, raise the issue of electronic opting in in its proposed edits to the Order and Notice (ECF 102);
- After *another round* of edits to its Tentative Ruling on the aforementioned issues, Plaintiffs did not raise or suggest permitting electronic opting in (ECF 111).

On top of the fact that the Motion seeks to undo a provision of their own doing, Plaintiffs had ***five (5)*** opportunities to raise the issue of opting in electronically across three months. And Plaintiffs could have simply filed a motion to amend earlier. Plaintiffs never did. Rather, the Parties, over multiple iterations that were hotly litigated, negotiated and ironed out the Order and Notice (ECF 114 and 114-1, respectively) as they stand today. Now, Plaintiffs seek to undo all of these months of litigation – all to undo *their own handiwork*. Plaintiffs chose to only have mail-based opt-ins. Plaintiffs cannot now complain about the choice they made.

Against this self-inflicted injury, Plaintiffs make absolutely no showing of a need or even a rationale for their request, other than the bare fact that it would not be legally improper. See, *Hanigan v. OpSec Sec., Inc.*, No. 1:22-CV-00064-DCN, 2022 WL 4465518, at *6 (D. Idaho Sept. 26, 2022) ("Hanigan has not provided a reason as to why text message is needed beyond the argument that other courts have allowed text messaging.")

Nor do Plaintiffs make any claim that the mail-based notice has been deficient. That is because they cannot; based on data provided by the third party administrator, the notice was mailed to 3,971 people. Walrod Decl., ¶ 2. Those data also show that over 280 people have opted-in, which represents approximately 7% of the total population. *Id*. Plaintiffs also submit no evidence that permitting electronic opting-in would make more potential collective members aware of this lawsuit. (In fact,

Plaintiffs present no evidence whatsoever in support of the Motion). As of November 23, 2026, the third party administrator reports only 125 “undelivered” notices. Plaintiffs submit no evidence that Levi’s workforce is in any way particularly well-suited to electronic opt-in as compared to mailing in the forms. Indeed, courts have rejected requests to permit electronic notice even at the conditional certification approval phase, which involves considerably less potential for prejudice than during the opt-in period. *Villarreal*, 66 F. Supp. 3d at 1195.

Given the lack of any evidence indicating impairment of the current opt-in process, further Court intervention may very well come across as implicit judicial weighing in favor of Plaintiffs. There is no problem to fix, and granting the Motion will do nothing more than “stir up litigation” and increase participation. And, on that point, “courts should be hesitant to authorize duplicative notice because it may unnecessarily ‘stir up litigation’ or improperly suggest the Court's endorsement of Plaintiff's claims.” *Morrison v. Columbus Fam. Health Care LLC*, 672 F. Supp. 3d 524, 535 (S.D. Ohio 2023) (cleaned up); *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 434 (5th Cir. 2021) (courts “cannot signal approval of the merits or otherwise stir up litigation.”)

Therefore, the Court should deny the Motion because the Motion seeks extraordinary relief – modifying an opt-in process that has already been fully decided on – to fix or “clarify” language drafted by Plaintiffs, on no showing of need or a problem at all.

**c. The Motion Fails to Address Essential Practical Issues with Electronic Opt-In**

Despite proposing to materially change the current opt-in process, the Motion is also problematic because it provides no details to the Court regarding how it will actually be implemented.

First, the Motion provides no proposed modification of ECF No. 114 or, bafflingly, the notice that *itself* only permits mail-based opting in. Nor does the Motion explain how a potential collective member will know whether the opt-in notice that they received by mail is now defunct and out of date.

Second, the Motion does not explain what the “interactive website” that will be sent to nearly 4,000 people will look like, what it will say, and what features it will have to interact with potential collective members. The Parties painstakingly negotiated the notice over multiple rounds of briefing and rulings by this Court. While these pose obvious fairness and prejudice issues, there is a more subtle issue

that, without Court supervision, a website or communication by Plaintiffs may lack the requisite "seriousness of the communication." *Kiley*, 297 F. Supp. 1268. And, like in *Kiley*, Plaintiffs have submitted no draft communications for consideration.

Third, and perhaps most importantly, the Motion provides no explanation for how it will guarantee the authenticity of opt-ins. This is an important concern that courts have considered when weighing whether to grant electronic opt-in. In 2002, before the advent of social media, AI, and Large Language Models, the District of Colorado observed that "electronic communication inherently has the potential to be copied and forwarded to other people via the internet with commentary that could distort the notice approved by the Court. Electronic mail heightens the risk that the communication will be reproduced to large numbers of people who could compromise the integrity of the notice process. In addition, email messages could be forwarded to nonclass members and posted to internet sites with great ease." *Reab v. Elec. Arts, Inc.*, 214 F.R.D. 623, 630–31 (D. Colo. 2002). Even the cases cited by Plaintiffs in their Motion require some form of authentication. *Douglas v. Xerox Bus. Servs., LLC*, No. C12-01798-JCC, 2015 WL 12930486, at *3 (W.D. Wash. Feb. 9, 2015) ("The Court hereby APPROVES the use of both mail "consent to join" forms as well as an online opt-in form available on the notice website, *so long as opt-in plaintiffs submit some sort of verifying information to accompany their signature*.") (emphasis added); *Kasapi v. E Mortg. Cap. Inc.*, 829 F. Supp. 3d 760, 780 (D. Ariz. 2026) ("The collective members may execute their consent forms traditionally or electronically *via DocuSign and/or Clio*") (emphasis added). Here, problematically, Plaintiffs offer no such mechanism that would address these concerns.

The Parties painstakingly litigated, briefed over multiple rounds, and obtained multiple Court rulings on the notice that was ultimately finalized and distributed to 4,000 putative collective members. In their attempt to get the Court to permit, essentially, a further notice, Plaintiffs submit nothing and do not even give the Court (or Levi) a proposed website, or proposed requirements for any email opt-in, as a starting point. The Motion should be denied for the additional reason that Plaintiffs failed to include a proposal with these basic details.

**d. To the Extent the Court Is Inclined to Permit Electronic Opt-In, No Further Notice or Extension Should be Granted**

The Motion states that "In the alternative, Plaintiffs request that the Administrator send an additional text message reminder with a hyperlink to the interactive website once the Court rules, and that the Participation Deadline be extended as necessary." Motion, 2:8-10. This is an "alternative" to the Motion's primary request for relief, which is – as best as Levi can tell – modification of the text-notice to take place on December 3, 2026, to include a link to an "interactive website" that would contain an unspecified method of opting in.

However, even if ECF No. 114 permitted electronic opt-in, it did not provide for sending a link to an "interactive website" as part of the text-notice. But granting a supplemental notice and/or an extension of time to the opt-in period would be disproportionate to the non-existent prejudice shown by Plaintiffs, and even more strongly suggesting the kind of improper "solicitation" prohibited by the Court in *Sperling*.

And it would be unwarranted because Plaintiffs could have fixed this non-existent problem sooner if they had exercised reasonable diligence. Despite having had multiple bites at the apple to add express language to ECF No. 114 and the notice, Plaintiffs have done nothing until **28 days**, close to halfway, through the opt-in period. In fact, even once Plaintiffs raised the issue by email, Plaintiffs' counsel missed multiple pre-arranged meet and confer calls on this topic, indicating that it was not particularly urgent to them. Walrod Decl., ¶ 7. Plaintiffs knew what the Order and Notice said, and also knew about the text message deadline since, at the latest, September 2, 2026. They did nothing for 76 days to raise the issue. They even knew there would be a dispute about opting in electronically and did nothing for 19 days. Walrod Decl., ¶¶ 4, 5. To the extent that Plaintiffs' opt-in timeline is affected (and again, it is not being affected) by this Motion or the alleged lack of "clarity," that prejudice is Plaintiffs' own doing for two reasons: (1) Plaintiffs drafted the language of both ECF No. 114 and the notice that does not permit electronic opt-in, and (2) Plaintiffs did not reasonably diligently fix the "problem" before it is close to too late.

To this latter point, Plaintiff's requested modification would also delay completion of the notice process. The Court-approved Notice has already issued and tells potential opt-ins how to participate. If the Court now authorizes a materially different method of opting in, fairness would require informing the collective of that new procedure, necessitating supplemental notice and a reasonable opportunity to act on it. That, in turn, would either require extending the existing opt-in deadline or create an arbitrary disparity between individuals who receive the new instructions early and those who receive them near the existing deadline. What Plaintiff characterizes as a simple "clarification" therefore threatens to reopen and prolong a notice process that is already underway.

## V. CONCLUSION

For all of the foregoing reasons, the Court should deny the Motion.

DATED: November 25, 2026

Respectfully submitted,
SEYFARTH SHAW LLP

By: ______________________
Michael Afar
Ryan McCoy
Petersen D. Walrod
Attorneys for Defendant
LEVI STRAUSS & CO.